J. S35002/16

2016 PA Super 124

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
REGINALD ROANE, : No. 2602 EDA 2014
:
Appellant :


Appeal from the PCRA Order, August 15, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0823721-1984


BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND MUSMANNO, J.


OPINION BY FORD ELLIOTT, P.J.E.: **FILED JUNE 15, 2016**

Reginald Roane appeals from the August 15, 2014 order of the Court

of Common Pleas of Philadelphia County denying his amended petition under

the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We

affirm in part, reverse in part, and remand for resentencing.

A previous panel of this court recited the following relevant facts:

> . . . [T]he evidence established that at the time of
> his death, William Crandall lived alone at
> 3147 N. Carlisle Street in Philadelphia. For several
> years he was almost totally confined to a wheelchair.
> He was apparently a small dealer in drugs. Late in
> the evening of January 23, 1984, Maria Davis and
> her fourteen-month old daughter, Nicole[,] visited
> Mr. Crandall at his home. Ms. Davis was a neighbor
> of Mr. Crandall and assisted him with household
> chores. At approximately 10:15 p.m., while
> Mr. Crandall and Ms. Davis were playing cards,
> [appellant] and another man arrived at Crandall's
> apartment. [Appellant] indicated that he wanted to

buy some marijuana. Ms. Davis admitted the two men and a third man who subsequently arrived at the apartment.

After Mr. Crandall handed a small paper bag to [appellant,] one of [appellant's] accomplices stated "This is a stick-up," and wrapped his arm around Ms. Davis' neck in a choke hold, and placed a handgun at her back. [Appellant] simultaneously placed Mr. Crandall in a choke hold and stuck a handgun in his back. Crandall then pulled a handgun from his wheelchair and aimed it at the man who was holding Ms. Davis.

Nicole began to cry, and Ms. Davis begged her assailants to let her go to the child. She was thrown to the floor and placed her body over her child's. Her sight was diverted from [appellant] when she heard the sounds of a struggle and four or five gunshots erupt from the area where [appellant] and Mr. Crandall were. After the three men left, Ms. Davis called the police, as well as her brother who lived with her nearby.

Shortly after the incident, Ms. Davis identified each of the three men involved from photographs shown to her by the police. She told the police she did not know [] appellant. Several months after identifying [appellant's] photograph, Ms. Davis informed the police that she knew [appellant] as one of her gradeschool[sic] classmates, whom she had not seen for approximately six years prior to William Crandall's murder.

*Commonwealth v. Roane*, No. 1874 Philadelphia 1987, unpublished

memorandum at 2-3 (Pa.Super. filed April 12, 1988).

The PCRA court aptly summarized the long and complicated procedural

history of this case:

[Appellant] was arrested on August 14, 1984 and charged with a range of offenses, including

- 2 -

murder.[Footnote 1]  On March 22, 1985 a jury presided over by the Honorable Juanita Kidd Stout, now deceased, found him guilty of second-degree murder, criminal conspiracy, robbery and possession of an instrument of crime (PIC).  On April 1, 1985 trial counsel, Wallace Walker, Esquire, filed a Post-Verdict Motion, and was later allowed to withdraw from the case.  Dale Miller, Esquire, was then appointed as [appellant's] new counsel and he amended the Post-Verdict Motion on October 14, 1986.  Thereafter, on June 23, 1987, [appellant] was sentenced by Judge (later Justice) Stout to life imprisonment without the possibility of parole for second-degree murder and a concurrent five to ten years of incarceration on the criminal conspiracy charge, ten to twenty years of incarceration on the robbery charge, and two and one-half to five years of incarceration on the PIC charge.  On June 25, 1987 [appellant] filed a timely Notice of Appeal and on April 12, 1988[,] the judgment of sentence was affirmed by the Superior Court in a memorandum opinion.[Footnote 2]  On May 10, 1988 [appellant] petitioned the Supreme Court of Pennsylvania for allowance of appeal, but said petition was denied on January 31, 1989.[1]  [Appellant] did not seek **certiorari** before the United States Supreme Court, and his judgment of sentence therefore became final on May 1, 1989.

[Footnote 1] [Appellant] was charged with 18 [Pa.C.S.A.] § 2502(a) murder of the first degree; § 3701 robbery; § 3502 burglary; § 903 criminal conspiracy; § 3921 theft by unlawful taking; § 2504 involuntary manslaughter; and § 907 possession of an instrument of crime.

[Footnote 2] Memorandum Opinion, **Commonwealth v. Roane**, [1874 Philadelphia 1987], 378 Pa.Super. 651, 544 A.2d 1044 (Pa.Super. April 12, 1988).

---

[1] **Commonwealth v. Roane**, 557 A.2d 343 (Pa. 1989).

On March 9, 1990 [appellant] timely filed his first PCRA petition *pro se* seeking to raise an ineffective assistance of trial and appellate counsel claim. Norris Gelman, Esquire, was appointed to represent [appellant] on April 27, 1990. On July 23, 1991, [appellant] filed a *pro se* amended petition. On March 3, 1992[,] the Honorable James D. McCrudden found that [appellant] was uncooperative with Mr. Gelman, permitted counsel to withdraw and ordered [appellant] to proceed *pro se*. On October 28, 1993[, appellant's] first and uncounseled PCRA petition was summarily dismissed on the merits by Judge Joseph I. Papalini. On November 19, 1993[, appellant] filed a *pro se* Notice of Appeal and Statement of Questions Raised on Appeal. On January 25, 1994, new counsel, Joseph J. Marinaro, Esquire, was appointed to represent [appellant] on the appeal. The Superior Court reversed the summary dismissal of [appellant's] first *pro se* PCRA petition on July 18, 1994. On remand Mr. Marinaro was instructed to amend the PCRA petition, which he did on October 25, 1994. Subsequently, on November 29, 1996 the Honorable Genece E. Brinkley, having been assigned the case, issued a notice of intent to dismiss [appellant's] PCRA, finding the issues meritless. Accordingly, on December 10, 1996, Judge Brinkley denied [appellant's] request for an evidentiary hearing and dismissed his first PCRA petition. The notice of the dismissal, however, was never filed or docketed in the Quarter Sessions file.

[Appellant] did not appeal Judge Brinkley's order, but subsequently filed three petitions in an attempt to revive his right to appeal the dismissal of his first PCRA petition. *First*, on December 9, 1997, [appellant] filed a second PCRA petition *pro se*. This second PCRA petition was formally dismissed as untimely by Judge Stout on June 2, 1998. Later, on June 30, 1998, [appellant] filed *pro se* Notice of Appeal from Judge Stout's dismissal which he subsequently withdrew on August 31, 1998. *Second*, on August 4, 1998, [appellant] filed a third

*pro se* PCRA petition, which was his first petition for Writ of **Habeas Corpus** Relief, however the courts have no record of receiving it. **Third**, on July 19, 2000[, appellant] filed his fourth *pro se* petition and second petition for Writ of **Habeas Corpus** Relief, which the Superior Court has treated as an amendment to the original PCRA petition.

On December 16, 2000[,] the Defender Association of Philadelphia was appointed to represent [appellant]. The Defender Association filed an amended PCRA petition on November 27, 2001 seeking to reinstate [appellant's] right to appeal Judge Brinkley's December 1996 order dismissing his 1990 PCRA petition. An evidentiary hearing was held on May 7, 2003 before the Honorable Renee Caldwell Hughes to whom the case was then assigned. On May 15, 2003[, appellant] filed a supplemental PCRA petition. In a May 27, 2003 order, which was amended and corrected on June 26, 2003, Judge Hughes disposed of Judge Brinkley's undocketed order and reinstated [appellant's] right to appeal, *nunc pro tunc*, the dismissal of his first PCRA petition.[Footnote 7] On June 20, 2003 and July 8, 2003[, appellant] filed a Notice of Appeal pursuant to Judge Hughes's order and served it upon Judge Brinkley. On October 6, 2003 after the Commonwealth appealed Judge Hughes's reinstatement of [appellant's] appellate rights, Judge Hughes issued a supporting opinion.

> [Footnote 7] Judge Hughes found that the 2000/2001 PCRA petition was an extension of [appellant's] original 1990 PCRA petition.

On November 10, 2004[,] the Superior Court affirmed, in part, Judge Hughes's order, but remanded the case for an evidentiary hearing.[Footnote 11] On February 14, 2005[, appellant] requested an allowance of appeal to the Supreme Court of Pennsylvania, but said petition

- 5 -

was denied on June 15, 2005.[2]  On December 5, 2006 [appellant] filed a supplemental amendment to his (original) petition for PCRA relief.  On October 8, 2008 and January 26, 2009, pursuant to the Superior Court's order, an evidentiary hearing was held before Judge Hughes.  Oral arguments were heard by Judge Hughes on May 28, 2009, but a decision was never rendered.  Thereafter, upon Judge Hughes's retirement, [appellant's] case was transferred to this court on April 23, 2012.  The original PCRA petition was again amended on August 20, 2012 and December 16, 2013.  On May 10, 2012[,] this court listed the case for oral argument to occur on July 13, 2012, however, defense counsel requested that the matter be continued until the publication of decisions in pending appellate litigation relevant to issues raised by [appellant].  On July 16, 2014 this court found petitioner's layered ineffective assistance of counsel claims to be meritless.  Accordingly, a Rule 907 notice of intent to dismiss the PCRA petition was issued.  On July 31, 2014[, appellant] submitted a Response to 907 Notice seeking reconsideration of this court's decision.  On August 15, 2014[,] the PCRA petition was formally dismissed and [appellant] filed a Notice of Appeal to the Superior Court on September 8, 2014.

> [Footnote 11] Memorandum Opinion, ***Commonwealth v. Roane***, No. 1867 and 2060 EDA 2003 (Pa.Super. Nov. 10, 2004).

PCRA court opinion, 4/30/15 at 1-5 (emphasis in original, footnotes 1-6 and 8-13 omitted).

Appellant raises the following issues for our review:

A.      Did not the prosecutor commit misconduct by failing to turn over the substance of material, exculpatory, statements made by suspect Lee

---

[2] ***Commonwealth v. Roane***, 877 A.2d 461 (Pa. 2005).

Pompey to Detective Allen, as well as other police reports related to the investigation of the case, and were not all prior counsel ineffective for failing to raise and preserve this meritorious issue?

B. Was not appellant denied federal and state equal protection of the law by the prosecutor's exclusion of venirepersons from the petit jury because of race, and were not all prior counsel ineffective for failing to raise and preserve this meritorious issue?

C. Was not appellant denied state and federal due process of law when the prosecutor intentionally presented "bad character" witnesses who, unbeknownst to defense counsel, were police officers whose knowledge of appellant's reputation derived solely from their role investigating an unrelated crime appellant allegedly committed, and were not all prior counsel ineffective for failing to raise and preserve this meritorious issue?

D. Did not the Commonwealth improperly use appellant's expunged juvenile arrest photograph to obtain and introduce at trial an identification of him by the sole Commonwealth eyewitness, and were not all prior counsel ineffective for failing to raise and preserve this meritorious issue?

E. Did not the trial court err by effectively instructing the jury that it must find that malice existed if the killing occurred in the course of a robbery, thus creating an unconstitutional mandatory presumption of malice, and were not all prior counsel ineffective for failing to raise and preserve this meritorious issue?

F. Did not the trial court err when it gave a contradictory and incorrect charge to the jury on reasonable doubt that violated due process

of law by diminishing the prosecutor's burden of proof[,] and were not all prior counsel ineffective for failing to raise and preserve this meritorious issue?

G.   Is not appellant entitled to relief under the PCRA because his conviction resulted from constitutionally ineffective assistance of trial counsel, post-verdict motion/direct appeal counsel, and PCRA counsel due to their failure to raise and preserve the above issues and their failure to allege the ineffectiveness of preceding counsel?

H.   Does not the imposition of a life without parole sentence for a juvenile convicted of second degree murder violate the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution?

Appellant's brief at 4-5.[3]

PCRA petitions are subject to the following standard of review:

"[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." ***Commonwealth v. Dennis***, 609 Pa. 442, 17 A.3d 297, 301 (Pa. 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing

---

[3] At the outset, we note that the Pennsylvania Rules of Appellate Procedure limit a principal brief to 14,000 words, unless the brief does not exceed 30 pages.  Pa.R.A.P. 2135(a)(1).  Where the brief exceeds 30 pages, a certificate of compliance with the 14,000 word-count limit must be filed.  ***Id.*** Here, appellant's principal brief is 122 pages in length—over four times the maximum page length prescribed by Rule 2135(a)(1).  Counsel, however, filed a petition pursuant to Rule 2135(a)(1) requesting permission to exceed the brief's maximum word count and page limit.  ***See DeMasi v. DeMasi***, 530 A.2d 871, 874 n.1 (Pa.Super. 1987), ***appeal denied***, 539 A.2d 811 (Pa. 1988).  We will grant appellant's petition and consider all issues on their merits.

> court. ***Id.*** at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived, ***id.*** § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[.]" ***Id.*** § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" ***Id.*** § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." ***Id.*** § 9544(b).

***Commonwealth v. Treiber***, 121 A.3d 435, 444 (Pa. 2015). Before we can begin to address appellant's issues on the merits, we must first determine if appellant's issues were properly preserved for appeal, and if so, whether his issues are cognizable for the purposes of collateral review. We shall review each issue to determine whether it has been properly preserved for appeal and is cognizable for collateral review individually.

Under the PCRA, an individual is eligible for post-conviction relief if the conviction was the result of "a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i).

The PCRA also permits relief when a conviction is the result of "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process, that no reliable adjudication of guilt or innocence could have taken place." *Id.* at § 9543(a)(2)(ii). For cases in which a claim of trial error is being raised under the guise of an ineffective assistance of counsel claim, our supreme court has issued the following warning:

> PCRA claims are not merely direct appeal claims that are made at a later stage of the proceedings, cloaked in a boilerplate assertion of counsel's ineffectiveness. In essence, they are extraordinary assertions that the system broke down. To establish claims of constitutional error or ineffectiveness of counsel, the petitioner must plead and prove by a preponderance of evidence that the system failed (*i.e.*, for an ineffectiveness or constitutional error claim, that in the circumstances of his case, including the facts established at trial, guilt or innocence could not have been adjudicated reliably), that his claim has not been previously litigated or waived, and where a claim was not raised at an earlier stage of the proceedings, that counsel could not have had a rational strategic or tactical reason for failing to litigate these claims earlier.

*Commonwealth v. Rivers*, 786 A.2d 923, 929 (Pa. 2001).

As we review appellant's issues, we also must determine whether appellant's claims have been previously litigated or waived. The PCRA requires that, in order for a petitioner to be eligible for relief, his or her claim cannot have been "previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). The PCRA mandates that an issue is waived if "the petitioner

could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b). Our supreme court has stated that "a PCRA petitioner's waiver will only be excused upon a demonstration of ineffectiveness of counsel in waiving the issue." **Commonwealth v. Albrecht**, 720 A.2d 693, 700 (Pa. 1998).

When considering whether counsel was ineffective, we are governed by the following standard:

> The governing legal standard of review of ineffective assistance of counsel claims is well-settled:
>
> > [C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. **Strickland v. Washington**, 466 U.S. 668 (1984). This Court has described the **Strickland** standard as tripartite by dividing the performance element into two distinct components. **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987). Accordingly, to prove counsel ineffective, the petitioner must demonstrate that (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. **Id.** A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.

> ***Commonwealth v. Busanet***, 54 A.3d 34, 45 (Pa.
> 2012) (citations formatted). Furthermore, "[i]n
> accord with these well-established criteria for review,
> [an appellant] must set forth and individually discuss
> substantively each prong of the ***Pierce*** test."
> ***Commonwealth v. Fitzgerald***, 979 A.2d 908, 910
> (Pa.Super. 2009).

***Commonwealth v. Perzel***, 116 A.3d 670, 671-672 (Pa.Super. 2015).

## I.

The first issue appellant raises for our review is whether the Commonwealth "committed misconduct by failing to turn over the substance of material, exculpatory statements made by suspect Lee Pompey to Detective Allen, as well as other police reports related to the investigation of the case." (Appellant's brief at 32.) Appellant also claims that all previous counsel were ineffective for failing to raise this issue either during or after trial or on direct appeal. (***Id.***)

Here, appellant did not raise this issue on direct appeal; however, his failure to do so is excused because he is alleging ineffective assistance of counsel. In order to determine whether this issue has arguable merit pursuant to the ***Pierce*** test, we shall review appellant's claim of prosecutorial misconduct for failing to disclose material exculpatory information on its merits.[4]

---

[4] Because appellant's first six issues are layered ineffective assistance of counsel claims, we shall review all six issues on their merits to determine whether appellant has met the arguable merit prong under ***Pierce***.

> In interpreting [] federal precedent [], this Court has explained that, in order to establish a **Brady**[5] violation, a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. **See Commonwealth v. Lambert**, 584 Pa. 461, 471, 884 A.2d 848, 854 (2005); **Commonwealth v. Collins**, 585 Pa. 45, 68, 888 A.2d 564, 577-78 (2005). However, "[t]he mere possibility that an item of undisclosed information **might** have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." **Commonwealth v. Chambers**, 570 Pa. 3, 29, 807 A.2d 872, 887 (2002) (citation omitted and emphasis added). Rather, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Id.** at 29, 807 A.2d at 887-88 (quoting [**United States v. Bagley**, 473 U.S. 667, 682 (1985)]).

**Commonwealth v. Willis**, 46 A.3d 648, 656 (Pa. 2012) (plurality). "When conducting this analysis in the PCRA context, a defendant must establish that the alleged **Brady** violation 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa.Super. 2012), **appeal denied**, 78 A.3d 1090 (Pa. 2013), citing 42 Pa.C.S.A. § 9543(a)(2)(i); **see also Commonwealth v. Copenhefer**, 719 A.2d 242,

---

[5] **Brady v. Maryland**, 373 U.S. 83 (1963).

259 (Pa. 1998), **cert. denied**, 528 U.S. 830 (1999). Moreover, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." **Commonwealth v. Cam Ly**, 980 A.2d 61, 76 (Pa. 2009), quoting **United States v. Agurs**, 427 U.S. 97, 109-110 (1976).

In the instant appeal, appellant is unable to establish that the information allegedly withheld by the Commonwealth was material to his defense. Appellant is also unable to establish that the material that he claims the Commonwealth withheld, "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Specifically, appellant alleges that Lee Pompey made a "damaging statement" while in police custody, and that the Commonwealth failed to disclose his statement to the defense. (Appellant's brief at 33.) Appellant also alleges that a "reasonable reading" of Detective Hildred Allen's testimony, "is that Pompey provided information that would have been favorable to the defense, exculpated appellant, or led to information exculpating appellant." (**Id.**)

As noted by the PCRA court, this is not reflected by the record. Detective Allen's testimony at trial regarding his interaction with Pompey was as follows:

> Q:   Detective, calling your attention to January of
>        1984[,] did you in the performance of your

Q: duties as the assigned homicide investigator into the death of William Crandall, Senior, did you come into contact with a person by the name of Anthony Pompay [sic]?

A: Yes, I did.

Q: Where did you see Mr. Pompay [sic]?

A: At the Homicide Division, 8th and Race.

Q: When was that that you saw him, sir?

A: It was approximately a couple of days after the homicide. Approximately January 25 or 26.

Q: Now, who brought Mr. Pompay [sic] to Homicide?

A: Officer [Anthony] Melfi.

Q: Did you spend sometime [sic] with Mr. Pompay [sic]?

A: Yes, I did.

Q: Approximately how much time would you say?

A: I spent approximately four, five hours with him.

Q: Now, during that four or five hours how much of that period of time was Officer Melfi present?

A: He was only present for maybe five minutes or so.

Q: Now, Mr. Pompay [sic], what was his apparent condition at the time you saw him?

A: He appeared to me to be very intoxicated.

Q:   Did you charge Mr. Pompay [sic] with any crime in connection with the death of Mr. Crandall?

A:   No, I did not.

Q:   What, if anything, did you do with Mr. Pompay [sic]?

A:   I talked to Mr. Pompay [sic] about the incident, the homicide, and I had him fingerprinted and photographed.

Q:   And then what did you do?

A:   I released him.

Q:   Did you show him to Maria Davis at all?

A:   No.

Notes of testimony, 3/19/85 at 249-251.  Defense counsel did not cross-examine Detective Allen.

At no point does the record indicate that Pompey provided exculpatory statements to the police regarding appellant's role in Mr. Crandall's death. We, therefore, find that appellant's claim that the Commonwealth improperly withheld exculpatory evidence is without underlying merit.  Because appellant's claim lacks underlying merit, his ineffective assistance of counsel claim must fail.

**II.**

In his second issue, appellant avers that he was "denied federal and state equal protection of the law by the prosecutor's exclusion of venire-persons from the petit jury because of race."  (Appellant's brief at

38.) Appellant further avers that all prior counsel were ineffective for failing to raise and preserve the issue. (*Id.*) The Commonwealth argues that appellant failed to meet the burden of proof for a *Batson*[6] challenge on collateral review. (Commonwealth's brief at 13.)

Before we can address appellant's claim on its merits, we must first determine the applicability of *Batson* to appellant's case. *Batson* was decided by the United States Supreme Court on April 30, 1986, which was over one year after appellant's trial concluded on March 22, 1985. At the time of appellant's trial and jury selection, *Swain v. Alabama*, 380 U.S. 202 (1965), controlled in cases involving allegations of racial discrimination in jury selection.[7] The Supreme Court, however, held that a petitioner is entitled to a retroactive application of *Batson* in matters where a direct

---

[6] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[7] In *Swain*, the United States Supreme Court assigned the burden of proving racial discrimination in jury selection to the defendant--mandating that the defendant must overcome the presumption that the prosecution in a criminal case was using peremptory strikes to remove African Americans based on "acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged." *Id.* at 223. The Court stated further that the presumption is overcome in cases where, "the State has not seen fit to leave a single [African American] on any jury in a criminal case." *Id.* at 224. In *Batson*, the Court overruled *Swain* and placed the burden of proving that racial discrimination did not take place during jury selection with the prosecution. A defendant must make a *prima facie* showing of racial discrimination during jury selection, and, upon the trial court's determination that *prima facie* racial discrimination exists, the prosecution must provide a neutral explanation of its peremptory strikes. *Batson*, 467 U.S. at 100.

appeal was pending at the time *Batson* was decided.  *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

"However, it is well-settled that in order for a new law to apply retroactively to a case pending on direct appeal, the issue had to be preserved in the trial court and at all subsequent stages of the adjudication up to and including the direct appeal."  *Commonwealth v. Smith*, 17 A.3d 873, 893-894 (Pa. 2011), *cert. denied*, ___ U.S. ___, 133 S.Ct. 24 (2012), citing *Commonwealth v. Freeman*, 827 A.2d 385, 395 (Pa. 2003), *cert. denied*, 543 U.S. 822 (2004) (citations omitted).  Here, appellant did not raise an issue of racial discrimination in the jury selection either at trial or on direct appeal.  He does not waive the issue, however, because he raises the issue on collateral review under the guise of an ineffective assistance of counsel claim.  Therefore, we will review the issue on its merits while applying the rule in *Batson* retroactively to appellant's case.  *See Albrecht*, 720 A.2d at 700 (excusing waiver upon a demonstration of ineffective assistance of counsel).

Before we review appellant's *Batson* claim on its merits, we must first address appellant's burden of proof.  While *Batson* shifted the burden of proof from defendants to prosecutors, such protection does not extend to collateral review.

> We have held, however, that in order to succeed on an unpreserved claim of racial discrimination in jury selection in the context of a claim of ineffective assistance of counsel, a post-conviction petitioner

> may not rely on the burden-shifting paradigm
> established by ***Batson***. Rather, he must prove by a
> preponderance of the evidence, in the first instance
> and throughout, actual, purposeful discrimination by
> the prosecutor, in addition to all other requirements
> essential to overcome the underlying claim.
> [***Commonwealth v. Uderra***, 862 A.2d 74, 87 (Pa.
> 2004)], ***see also Commonwealth v. Williams***, 581
> Pa. 57, 863 A.2d 505, 514-515 (2004). Placing this
> high burden on a post-conviction petitioner comports
> with the heightened criteria for obtaining post-
> conviction relief. ***Uderra***, 862 A.2d at 86. . . . ***See***
> ***Commonwealth v. Ligons***, 601 Pa. 103, 971 A.2d
> 1125, 1142 (2009) (explaining that a post-conviction
> petitioner is not entitled to rely on ***Batson***'s burden
> shifting approach, but instead bears the burden in
> the first instance and throughout of establishing
> actual, purposeful discrimination by a preponderance
> of the evidence).

***Smith***, 17 A.3d at 895.

> To satisfy his burden, a defendant raising a ***Batson***
> claim must "make an adequate record specifically
> identifying the race of all the venirepersons who had
> been removed by the prosecution, the race of the
> jurors who served, or the race of jurors acceptable to
> the Commonwealth who had been stricken by the
> defense," since otherwise we lack an adequate
> record upon which to evaluate the ***Batson*** claim.
> ***Commonwealth v. Spence***, 534 Pa. 233, 247, 627
> A.2d 1176, 1182-83 (1993).

***Commonwealth v. Simpson***, 66 A.3d 253, 262 (Pa. 2013).

Here, appellant avers that trial counsel was ineffective because he

failed to "object to the prosecutor's use of his peremptory strikes in this

case, to develop a record of the discriminatory use of strikes, and/or

demand race-neutral explanations for the prosecutor's actions." (Appellant's

brief at 49.) In an attempt to meet his burden as promulgated by ***Simpson***,

appellant has identified the race of 39 of the 46 people who were not struck for cause. (Appellant's brief at 50.) Appellant claims to have determined the race of 12 of the 15 people struck by the Commonwealth; of the 12, the Commonwealth exercised peremptory strikes against 9 African Americans, 1 Hispanic person, and 1 white person. (*Id.*) Appellant further avers that the Commonwealth exercised peremptory strikes against 2 of a possible 17 white individuals. (*Id.* at 50-51.) Appellant did not exercise a peremptory strike against any African Americans who the Commonwealth accepted to sit on the jury. (*Id.* at 51.) The final jury consisted of 5 white jurors, 3 African American jurors, 1 Hispanic juror, and appellant was not able to determine the race of 3 remaining jurors.[8] (*Id.*)

In *Uderra*, our supreme court concluded that in a case where no explanation was available as to why particular jurors were stricken, an appellant's "efforts to compare characteristics of empaneled jurors with stricken ones are abstract and of very limited value in terms of satisfaction of his burden of proof." *Uderra*, 862 A.2d at 87. Moreover, because appellant was not able to determine the race of three members of the jury, we agree with the PCRA court's determination that appellant has not met his burden in this case. As aptly stated by the PCRA court,

> [B]ecause the racial identification of all of the "venirepersons at issue" is not known, [appellant] is unable to fully "present a record identifying the race or ethnicity of the venirepersons stricken by the

---

[8] Appellant avers that both alternates were white. (*Id.*)

> Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected."

PCRA court opinion, 4/30/15 at 17, quoting **Uderra**, 862 A.2d at 84. Therefore, we find that appellant's **Batson** claim is without arguable merit.[9]

We next review appellant's claim on its merits under **Swain**. As noted **supra**, **Swain** placed a high burden of proof on a defendant to claim racial discrimination during jury selection, requiring a defendant to overcome the presumption that the prosecutor is "using the State's challenges to obtain a fair and impartial jury to try the case before the court." **Swain**, 380 U.S. at 222.

In an attempt to meet his burden of proving actual, purposeful discrimination by the Commonwealth during jury selection, appellant relies primarily on the following: a statistical sampling of death penalty cases collected by University of Iowa Law School Professor David Baldus that were tried in Philadelphia County between September 10, 1980 and April 15, 1986, during the administration of then-Philadelphia County District Attorney

---

[9] Appellant devotes several pages of his brief alleging that trial counsel was ineffective for failing to anticipate the United States Supreme Court's holding in **Batson**, which was decided while appellant's case was pending on direct appeal. (**See** appellant's brief at 63-67.) Contrary to appellant's allegation, our supreme court has held that "[c]ounsel clearly cannot be faulted for failing to raise a **Batson** objection at trial because **Batson** did not yet exist. **See**, **e.g.**, [**Commonwealth v. Gribble**, 863 A.2d 455, 464 (Pa. 2004)] ('Counsel cannot be deemed ineffective for failing to predict developments or changes in the law.')." **Commonwealth v. Sneed**, 899 A.2d 1067, 1076 (Pa. 2006).

Edward G. Rendell,[10] and a training videotape that was produced by the Philadelphia County District Attorney's Office in 1987. (Appellant's brief at 43-46.) Appellant avers that the statistical sampling from Professor Baldus' study of death penalty cases from Philadelphia County during Governor Rendell's tenure as Philadelphia County District Attorney shows that prosecutors exercised peremptory strikes against 63% of strike-eligible African Americans. (*Id.* at 43-44.) Appellant further avers that the alleged discriminatory practices of the Philadelphia County District Attorney's office were confirmed by the "McMahon tape," which was discovered in 1997. (*Id.* at 45.) The "McMahon tape" was produced in 1987 and therein, Jack McMahon, a now-former Philadelphia County Assistant District Attorney, "makes a number of highly inflammatory comments implying that he regularly seeks to keep qualified African Americans from serving on juries." *Wilson v. Beard*, 426 F.3d 653, 656 (3d Cir. 2005).

Neither Professor Baldus's study nor the existence of the McMahon tape, as reprehensible and inflammatory as its contents may be, satisfies appellant's burden of proof in the context of the PCRA.

> This Court has repeatedly rejected similar arguments, holding that the mere existence of the McMahon tape does not demonstrate prejudice in a particular case. *Commonwealth v. Williams*, 581 Pa. 57, 863 A.2d 505, 523 (2004); *Commonwealth*

---

[10] Then-District Attorney Rendell served as Philadelphia County District Attorney from 1978 through 1985. He subsequently served as Governor of the Commonwealth, therefore, he will be referred to hereinafter as "Governor Rendell."

> *v. Rollins*, 558 Pa. 532, 738 A.2d 435, 443 n. 10 (1999); *see Commonwealth v. Marshall*, 570 Pa. 545, 810 A.2d 1211, 1228-29 (2002); *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588-89 (2000). Similarly, we have rejected speculative arguments based on the Baldus study. *See* [*Commonwealth v. Washington*, 927 A.2d 586, 610 (Pa. 2007)]; *Williams*, 863 A.2d at 523; *Commonwealth v. Morris*, 573 Pa. 157, 822 A.2d 684, 698 (2003).

*Smith*, 17 A.3d at 897. We, therefore, find that appellant has not met his burden of proof to successfully raise a *Swain* claim as a layered ineffective assistance of counsel claim, and accordingly, his claim fails.

## III.

In his third issue for our review, appellant avers that he was "denied state and federal due process of law when the prosecutor intentionally presented 'bad character' witnesses," who were police officers who only knew of appellant's reputation through their role in investigating an unrelated crime, and that all preceding counsel were ineffective for failing to raise this issue. (Appellant's brief at 69.) The Commonwealth avers that this issue is not cognizable for collateral review because it was previously litigated. (Commonwealth's brief at 14.) Specifically, the Commonwealth argues that this court addressed appellant's third issue on direct appeal in 1988. Appellant denies that the issue was previously litigated, as he claims that the issue in the instant appeal is limited to whether "the prosecutor failed to disclose that both William Schatzle and William Peake were police

officers, whose basis of knowledge stemmed only through a criminal investigation." (Appellant's brief at 69 n.20.)

Before we can address appellant's claim on its merits, we must first determine whether the issue has been previously litigated. A claim that has been previously litigated is not cognizable for collateral relief. 42 Pa.C.S.A. § 9544(a)(2). The PCRA defines a matter as having been previously litigated when "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *Id.* "[T]he fact that a petitioner presents a new argument or advances a new theory in support of a previously litigated issue will not circumvent the previous litigation bar." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa.Super. 2010), citing *Commonwealth v. Hutchins*, 760 A.2d 50 (Pa.Super. 2000).

In the present case, appellant raised the following issue on direct appeal: "[Appellant] next contends that the [trial] court erred in permitting a witness to testify for the Commonwealth in rebuttal that [appellant's] reputation was that he was not a peaceful person." *Roane*, No. 1874 Philadelphia 1987 at *5. This court held that Officer Schatzle, who testified for the Commonwealth, was properly permitted to testify by the trial court in order to "rebut the testimony of [] appellant's character witnesses," and that the trial court did not abuse its discretion. *Id.* Moreover, appellant also raised an ineffective assistance of counsel claim regarding trial counsel's

performance as it related to Officer Schatzle's testimony.[11] This court

reached the following conclusion as to whether trial counsel was ineffective:

> There is clearly no merit in [] appellant's third allegation of ineffective assistance of counsel. Counsel did not elicit testimony concerning [] appellant's participation in a robbery. Defense counsel was endeavoring to show that Mr. Sc[h]atzle did not reside in the same neighborhood as [appellant] who resided in North Philadelphia and Sc[h]atzle lived in Kensington. All counsel did was inquire as to how [appellant's] name came up in conversations with people who knew him. He did not solicit the reply that he was a suspect in a robbery case. Any prejudice to [] appellant by the reply was dispelled by the court's cautionary instruction. **See Commonwealth v. Travaglia**, 502 Pa. 474, 467 A.2d 288 (1983).

**Roane**, No. 1874 Philadelphia 1987, at *8.

We, therefore, find that appellant's third issue has been previously

litigated, having been decided by a previous panel of this court, and is not

cognizable under the PCRA. Accordingly, no relief can be granted.

**IV.**

For his fourth issue on appeal, appellant avers that the police

improperly used a photograph of appellant for identification purposes from a

juvenile record that had been ordered expunged by the trial court, and that

---

[11] Appellant's direct appeal was decided prior to our supreme court's decision in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002) (holding that review of counsel ineffectiveness claims should be deferred until collateral review), therefore, at the time of appellant's direct appeal, ineffective assistance of counsel claims were considered on direct appeal. **See Commonwealth v. Hubbard**, 372 A.2d 687 (Pa. 1977).

all preceding counsel were ineffective for failing to raise this issue. Specifically, appellant alleges that the police improperly used the expunged photograph in order to obtain an identification from Maria Davis. (Appellant's brief at 79.) Appellant further alleges that trial counsel was ineffective for failing to object at trial on the grounds that Davis' identification did not have an independent basis, but rather was derived from illegally obtained evidence. (*Id.* at 82.)

As noted by the PCRA court, at the time of appellant's 1985 trial,

> [t]here [was] no *per se* rule against the use of "mugshots" in this Commonwealth as a method of identification. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). The use of any photograph during an identification procedure [was] analyzed under the facts and circumstances of each particular case. *Id.* at 179-180, 292 A.2d at 374.

*Commonwealth v. Brown*, 512 A.2d 596, 598 (Pa. 1986); *see also* PCRA court opinion, 4/30/15 at 21.

This issue lacks arguable merit. By defense counsel's own admission, it is unclear whether the photograph used by the police was, in fact, expunged. At the evidentiary hearing, defense counsel stated: "I think our position was initially, we thought there was only one juvenile photo, and it ended up there [were] two juvenile photos. And the expungement order, it was unclear to us, or it became unclear, during the course of the hearing, as to which photo was actually expunged." (Notes of testimony, 7/13/12 at 23-24.) Because defense counsel could not determine whether the photograph

in question was actually expunged, appellant has not established by a preponderance of the evidence that this claim has arguable merit, and he is, therefore, not entitled to relief.

## V.

In his fifth and sixth issues on appeal, appellant raises issues with the trial court's instructions to the jury were improper, and he further claims that all preceding counsel were ineffective for failing to raise this issue. Appellant specifically avers that the trial court improperly defined the element of malice in regards to a second-degree murder charge to the jury. (Appellant's brief at 83-84.) Case law applicable at the time of appellant's trial indicates that the Commonwealth was required to prove beyond a reasonable doubt that a defendant committed the underlying felony with the requisite *mens rea* in order to "impute[] the malice incident to the intentional felony over to the killing, which, moreover, must be accomplished **in furtherance** of the intentional felony." *Commonwealth v. Rawls*, 477 A.2d 540, 543 (Pa.Super. 1984), citing *Commonwealth v. Waters*, 418 A.2d 312 (Pa. 1980) (emphasis in original).

When reviewing jury instructions, we are governed by the following standard:

> Our standard of review in assessing a trial court's jury instructions is as follows:
>
> > [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply

> isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.
>
> *Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa.Super. 2007) (internal citations, quotation marks, and brackets omitted).

*Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa.Super. 2007).

> We have explained the abuse of discretion standard as follows:
>
>> It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Bryant*, 67 A.3d 716, 726 (Pa. 2013), quoting

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1140 (Pa. 2007).

In the instant case, the trial court provided the jury with the following instruction regarding second-degree murder:

I shall now define for you murder in the second degree which is known as felony murder. A criminal homicide constitutes murder of the second degree when it is committed while the defendant was engaged as a principal or a co-conspirator in the perpetration of a felony.

Perpetration of a felony is defined as the act of the defendant in engaging in or being an accomplice or a co-conspirator in the commission of or attempt to commit any one of six enumerated felonies of which robbery is one.

Murder in the second degree, therefore, is known as felony murder and the malice necessary to make even an unintentional or accidental killing murder is constructively inferred from the malice incident to the perpetration of the initial felony.

The malice of the initial felony attaches to whatever else the accused may do in connection therewith.

Under the felony murder rule, the killing need not even be done by the defendant in a particular case, but it may have been done by an accomplice or co-conspirator acting in furtherance of the felonious undertaking.

In order to find the defendant guilty of murder in the second degree, you must find that the Commonwealth has established beyond a reasonable doubt, number one, that the defendant or an accomplice or co-conspirator caused the death of another person; and, two, that the killing occurred while the defendant, an accomplice or co-conspirator was engaged in the commission of a felony. And this underlying felony here is alleged to be robbery.

Notes of testimony, 3/20/85 at 321-322.

Upon careful review of the trial court's instructions to the jury, at no point did the trial court appear to relieve the Commonwealth of its burden of

proving all elements of the crimes charged beyond a reasonable doubt. Case law in effect at the time of appellant's trial indicates that a jury instruction that permitted a jury to impute malice to an actual killing based on the Commonwealth's proof beyond a reasonable doubt that a defendant committed the underlying felony with the requisite **mens rea** is proper. Therefore, we find that appellant's claim is without arguable merit, and, accordingly, his ineffective assistance of counsel claim must fail.

## VI.

In his sixth issue overall, and his second issue relating to jury instructions, appellant avers that the trial court erred in its instruction to the jury regarding reasonable doubt, and that all preceding counsel were ineffective for failing to raise or preserve this issue. (Appellant's brief at 86.) Specifically, appellant alleges that the trial court's instructions to the jury regarding reasonable doubt were "contradictory, incorrect, and ultimately diminished the prosecutor's burden of proof, and thus violated [appellant's] right to due process of law. (**Id.** (citations omitted).)

The trial court provided the following instructions regarding reasonable doubt:

> I charge you now on the burden of proof. There is no burden of proof and there is no burden of disproof on the part of the defendant. There is only one burden of proof and that is the burden of the Commonwealth. And the measure of that burden is to convince you of the guilt of the defendant beyond a reasonable doubt.

Now, the reasonable doubt standard does not apply to every specific detailed fact of a criminal case, but only to the essential elements of the crime. And as I said a moment ago, in a homicide case there are only three essential elements: that a death has occurred, that the death resulted from criminal agency, and that the defendant is legally responsible for that death.

. . . .

Now beyond a reasonable doubt. What does that mean? Beyond a reasonable doubt does not mean beyond all doubt or beyond any doubt. It does not mean proof to an absolute certainty or to a mathematical certainty, nor must the proof demonstrate the complete impossibility of innocence. A mere hesitation before reaching a verdict is not in and of itself a reasonable doubt.

The phrase beyond a reasonable doubt means just what it says: Proof of guilt beyond a reasonable doubt.

A reasonable doubt must fairly arise out of the evidence that was presented, or out of the lack of evidence, with respect to each element of the crime. It must be a real doubt and it cannot be a doubt fancied or conjured up in the mind of you, the jury, to escape an unpleasant verdict. It must be an honest doubt arising out of the evidence itself, the kind of doubt that would restrain a reasonable man or woman from acting in a matter of importance to himself or herself.

If you have such a doubt as to the guilt of the defendant, or as to any of the factors upon which his guilt may depend, it is your duty to acquit him.

Notes of testimony, 3/20/85 at 327-330.

Our supreme court promulgated the following definition of reasonable

doubt:

> A variety of definitions of "reasonable doubt," all expressing substantially the same thought, have been approved by the appellate Courts--*See Commonwealth v. Kluska*, 333 Pa. 65, 3 A.2d 398 [(1939)]. A standard and approved form of charge on this point would be: "The defendant comes before you presumed to be innocent and the burden is upon the Commonwealth to prove his guilt beyond a reasonable doubt. A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury to escape an unpleasant verdict; it must be an honest doubt arising out of the evidence itself, the kind of a doubt that would restrain a reasonable man (or woman) from acting in a matter of importance to himself (or herself)."

*Commonwealth v. Donough*, 103 A.2d 694, 697 (Pa. 1954); *see also Commonwealth v. Young*, 317 A.2d 258, 262 (Pa. 1974) (reaffirming the jury instruction promulgated by *Donough*); *Commonwealth v. Bryant*, 462 A.2d 785, 789 (Pa. 1983) (acknowledging *Donough* as the standard in reasonable doubt jury instructions).

Here, the record supports the conclusion that the trial court derived its jury instructions regarding reasonable doubt from *Donough*. At the time of appellant's trial, the language used in *Donough* was still recommended for jury instructions by our supreme court. Therefore, appellant's averments indicating that the trial court lowered the Commonwealth's burden of proof through its jury instructions are without merit, and accordingly his claim must fail.

**VII.**

In his seventh issue, appellant raises various ineffective assistance of counsel claims as they relate to trial counsel, post-verdict motion counsel, and PCRA counsel. Specifically, in addition to the issues previously raised in the present appeal, appellant avers several additional instances of ineffective assistance of counsel,. (Appellant's brief at 102-110.) Appellant further avers that Attorney Miller, appellant's counsel for post-verdict motions and direct appeal, was ineffective due to his failure to "investigate, raise, litigate and preserve" the issues listed above. (**Id.** at 113.) Finally, appellant avers that his first PCRA counsel, Attorney Marinaro, was ineffective for failing to raise the trial issues discussed above, in addition to failing to claim that Attorney Miller provided ineffective assistance on direct appeal. (**Id.** at 116.)

We shall address appellant's remaining ineffective assistance of counsel claim individually:[12]

a. **Failure to Properly Prepare for Trial**

Appellant first avers that Attorney Walker failed to properly prepare for trial. Specifically, appellant cites the alleged failure to seek discovery regarding Pompey's statements to Detective Allen as the grounds of his

---

[12] We shall address appellant's claims in the order in which they appear in his brief, however, if a claim was addressed as a stand-alone issue for any of appellant's first six issues raised on appeal, we will not address it again under his seventh issue.

alleged lack of proper preparation. (Appellant's brief at 103.) This claim is without merit.

As noted *supra*, there is no indication in the record that Pompey provided any information to the police that would prove to be exculpatory to appellant. Having already determined, *supra*, that appellant's claim that the police improperly withheld exculpatory evidence in violation of *Brady* is without merit, it only follows that Attorney Walker was not ineffective for failing to request discovery related to any statements made by Pompey to Detective Allen. Accordingly, because there is no arguable merit to appellant's claim, his ineffective assistance of counsel claim as it relates to Attorney Walker's preparation for trial is without merit.

b. **Failure to Open to the Jury**

Next, appellant avers that Attorney Walker was ineffective for failing to deliver an opening statement to the jury. Specifically, appellant avers that Attorney Walker's failure to deliver an opening statement to the jury caused him to fail to meet the "'objective standard of reasonableness' envisioned in *Strickland*." (Appellant's brief at 106.) Appellant also summarily states that, "[n]ever was an opening statement more crucial for the defense to give than in a single questionable eyewitness case as the one here." (*Id.*)

Our cases indicate that trial counsel cannot be deemed ineffective *per se* for failing to deliver an opening statement to the jury. *Commonwealth v. Busanet*, 817 A.2d 1060, 1066 (Pa. 2002),

***cert. denied,*** 540 U.S. 869 (2003), citing ***Commonwealth v. Rawles***, 462 A.2d 619, 624 (Pa. 1983) ("failure to make opening statement is within realm of sound trial strategy"). Accordingly, we find that this claim lacks arguable merit, and because appellant failed to satisfy one of the ***Pierce*** prongs, this claim must fail.

**c.     Failure to Impeach Witness Maria Davis**

Appellant also avers that Attorney Walker was ineffective for his failure to impeach Maria Davis. Specifically, appellant alleges that Attorney Walker failed to impeach Davis with the six prior signed and inconsistent statements that he had in his possession, and that "he made little use of any of them, failed to develop the fact that there were six of them, and had none of them marked as exhibits or introduced into evidence." (Appellant's brief at 106.)

The record contradicts appellant's assertion. A review of the trial transcript reveals that Attorney Walker attempted to impeach Davis through an extensive cross-examination. (***See generally*** notes of testimony, 5/18/85 at 97-125.) Moreover, in contradiction to appellant's claim, Attorney Walker directly referred to the fact that Davis spoke to the police on six different occasions.

> Q:   Do you recall giving various statements to the police?
>
> A:   Yes.
>
> Q:   In fact, you talked to the police a number of times, didn't you?

> A:   Yes.
>
> Q:   In fact, you gave the police some six different statements between January and the end of July; isn't that correct?
>
> A:   They weren't different, I think.
>
> Q:   You talked to them on six different occasions; isn't that correct?
>
> A:   Yes.

Notes of testimony, 8/18/85 at 97-98.  Throughout Attorney Walker's entire cross-examination of Davis, he attempts to impeach her credibility by reading her statements from previous conversations with the police or from testimony in court proceedings in an effort to emphasize her previous inconsistent statements.  (***See id.*** at 106-107; 122.)

Attorney Walker also highlighted instances in Davis's previous testimony in which her statements regarding whether appellant had a gun in his possession at the time of Mr. Crandall's shooting were inconsistent.

> Q:   Okay.  Now, ma'am, you testified on direct that you saw my client with a gun; isn't that correct?  Is that correct?
>
> A:   Yes.
>
> Q:   Ma'am, isn't it true this is the time -- first time in any of your statements or any of your testimony that you have said that?
>
> A:   No.
>
> Q:   Can you enlighten me as to when you said that before?

A:    I told the police officers that I knew who he was, the detective who he was.

Q:    When was that?

A:    I can't remember the date it was.

Q:    Well, you first told the police who is was [sic] July 31, 1984, right?

A:    Yes.

Q:    And you told them on that date that --

A:    Yes, I think it was that day.

Q:    So that's the date you told them that my client had a gun; is that correct?

A:    Yes.

. . . .

Q:    Ma'am, I want to direct your attention again back to the preliminary hearing that was conducted on August 22. Page 15 of the notes of testimony. Starting at the top of the page Mr. Davis.[13] "QUESTION: Do you know if Mr. Crandall fired his gun or not? ANSWER: No. QUESTION: You don't know if he did or not? ANSWER: No. . . . Mr. Walker: Now, you never saw my client with a gun, did you? ANSWER: No." Do you recall those questions; do you recall those answers[?]

A:    Yes.

Q:    Why didn't you testify on that date that Mr. Roane had a gun?

A:    Because I don't know why.

---

[13] Legrome Davis, Esq., was the Commonwealth's attorney during the trial.

Q: You don't know why?

A: No, I don't.

Q: So on two occasions, the first one being July 31, and then roughly --

A: On this occasion I was cut off on that one.

Q: But for whatever reason both on July 31 and August 22 you told a police officer and you told a court that my client didn't have a gun; isn't that correct?

A: Yes.

Q: But today you're sure that he had a gun?

A: Yes.

Notes of testimony, 8/18/85 at 119-123.

Appellant avers that counsel "fail[ed] to obtain and/or utilize prior inconsistent statements for impeachment purposes of a critical Commonwealth witness." (Appellant's brief at 107.) The record belies appellant's claim, therefore, appellant has not established by a preponderance of the evidence that his claim has arguable merit, nor that Attorney Walker's alleged failure to impeach Davis resulted in prejudice against appellant. Accordingly, this claim must fail.

### d. Post-Verdict/Direct Appeal Counsel was Ineffective

Appellant next avers that his post-verdict and direct appeal counsel, Dale Miller, Esq., rendered ineffective assistance due to his failure to "raise, litigate, and preserve" the first seven issues appellant raises in the instant

appeal, including the ineffective assistance of trial counsel, which, as noted *supra*, was permitted at the time the direct appeal was filed in this case. (Appellant's brief at 113.) We have discussed each of the issues at great length, and have found that none of the first seven issues raised by appellant has any merit. Arguable merit is the first prong that a PCRA petitioner is required to satisfy when alleging ineffective assistance of counsel. *See Pierce*, 527 A.2d at 975. Because appellant failed to satisfy the first *Pierce* prong, his claim of ineffective assistance of counsel against Attorney Miller must fail.

e.   **PCRA Counsel was Ineffective**

Finally, appellant avers that Attorney Marinaro did not provide effective assistance of counsel for appellant's first petition under the PCRA. As appellant correctly notes, a petitioner under the PCRA is entitled to assistance of counsel throughout the entire appellate process of a first petition under the PCRA. *Commonwealth v. Robinson*, 970 A.2d 455, 457 (Pa.Super. 2009) (*en banc*), citing Pa.R.Crim.P. 904(c) (citations omitted). We have also held that a petitioner is entitled to effective assistance of counsel for his or her first PCRA petition. *Commonwealth v. Perez*, 799 A.2d 848, 852 (Pa.Super. 2002) (citation omitted).

In the instant appeal, appellant avers that Attorney Marinaro, "failed to identify, investigate and present all available and appropriate claims for relief, including issues involving prior counsels' ineffectiveness." (Appellant's

brief at 116.) In order to successfully claim ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence that he or she suffered prejudice as a result of counsel's act or omission. **See Strickland**, 466 U.S. at 687; **Pierce**, 527 A.2d at 975. Here, despite the unusually long passage of time, this is an appeal of appellant's first petition filed pursuant to the PCRA. As a result, appellant cannot prove that he was prejudiced in any way by Attorney Marinaro's alleged ineffectiveness.[14] Indeed, the PCRA court reinstated appellant's appeal rights as they related to his original PCRA petition **nunc pro tunc** on May 27, 2003. Following this court's remand for an evidentiary hearing, appellant filed three supplemental amendments to his original petition for PCRA relief--on December 5, 2003, August 20, 2012, and December 16, 2013. (PCRA court opinion, 4/30/15 at 4-5.) Appellant, therefore, had numerous opportunities to correct any perceived error in his PCRA petition that was a result of any alleged ineffective assistance by Attorney Marinaro. Accordingly, appellant cannot prove by a preponderance of the evidence that he suffered any prejudice as a result of Attorney Marinaro's alleged ineffectiveness, and therefore, his claim must fail.

---

[14] The Defender Association of Philadelphia currently represents appellant, having been appointed to do so on October 16, 2000. (**See** PCRA court opinion, 4/30/15 at 3.)

**VIII.**

Under appellant's eighth and final issue, he avers that he is entitled to a resentencing hearing in light of the United States Supreme Court's decision in **Miller v. Alabama**, ___ U.S. ___, 132 S.Ct. 2455 (2012), which held that it is unconstitutional to sentence individuals who were under 18 years of age at the time of their offense to a mandatory minimum sentence of life imprisonment without the possibility of parole. In response to **Miller**, our supreme court held in **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013), that **Miller** did not apply retroactively to persons on collateral review. In light of the United States Supreme Court's recent decision in **Montgomery v. Louisiana**, ___ U.S. ___ 136 S.Ct. 718 (2016), however, **Cunningham**'s tenet that **Miller** cannot be applied retroactively is no longer good law in Pennsylvania. **See Commonwealth v. Secreti**, ___ A.3d ___, 2016 WL 513341 (Pa.Super. 2016) (interpreting **Montgomery** as making retroactivity under **Miller** effective as of the date of the **Miller** decision).

Here, the trial court sentenced appellant, who was 17 years old at the time of the offense, to a mandatory sentence of life imprisonment without the possibility of parole. In light of the Supreme Court's recognition in **Miller** that such a sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment, and the Court's recent retroactive application of **Miller** in **Montgomery**, we vacate the judgment of sentence and remand for resentencing.

Order affirmed in part, reversed in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2016