J-A30026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DUSTIN ANDREW SCOTT | |
| Appellant | No. 464 MDA 2016 |

Appeal from the Judgment of Sentence March 3, 2016
In the Court of Common Pleas of Huntingdon County
Criminal Division at No(s): CP-31-CR-0000411-2015

BEFORE:  BOWES, OLSON and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 11, 2017**

Appellant, Dustin Andrew Scott, appeals from the judgment of sentence entered on March 3, 2016, as made final by the denial of his post-sentence motion on March 14, 2016.  After careful consideration, we affirm.

The trial court summarized the factual background of this case as follows.

> On August 25, 2015, Kristin Huey (Huey) was dating [Appellant].
> Huey was three months pregnant with [Appellant's] child. . . .
> On the night of August 25, 2015, Huey received a [tele]phone
> call from [Appellant], and [Appellant] told her that he had
> admitted himself into the hospital because he had
> consumed bath salts that he believed were laced with bleach.  On the night
> in question, [Appellant] was high and paranoid while under the
> influence of the amphetamines and "research chemicals" that he
> had ingested.  After [Appellant] left the hospital, Huey and
> [Appellant] drove back to his one-bedroom apartment in
> Huntingdon Borough.
>
> Huey and [Appellant] sat on the porch to smoke and talk.
> [Appellant] was acting paranoid and kept a barbell in his hand

during the conversation. When they went to bed, [Appellant] brought the barbell with him and left it in the doorway. After going to bed, Huey received a text message that upset and angered [Appellant]. An argument then ensued.

Huey testified she pushed [Appellant], and [Appellant] then shoved her onto a double air mattress. Huey related she took three steps towards [Appellant] and hit him with a right hook to the left side of his face causing him to stumble back. . . . [Appellant] came toward Huey and hit her with a right hook to the left side of her jaw while she was seated on the air mattress. . . .

Huey immediately said she knew that her jaw was broken because she could not shut her mouth. Huey called her mother who took her to the hospital. Dr. [Jennifer] Holt, the emergency room physician at J.C. Blair Memorial Hospital, examined her and advised that Huey's jaw was offset from the left to the right. A CT scan and x-rays were taken, and Huey was given pain medication and antibiotics. Dr. Holt testified that Huey had received a comminuted fracture on the left side of the jaw, explaining that the jaw had been broken into several pieces. . . . Huey also had an opening in the gum line which indicated an open fracture, where the fracture caused enough damage that the tissue was opened and the bone was exposed. . . .

Huey was referred to Dr. Elliot Bilofsky, a board certified otolaryngologist. . . . On September 2, 2015, Dr. Bilofsky performed an open reduction internal fixation of Huey's fractures, and he also placed her teeth in occlusion. . . . Dr. Bilofsky testified that with her jaw wired, Huey would have a reduction in her ability to pronounce words and her diet was limited to liquids through a straw. Dr. Bilofsky said the only way for Huey to open her mouth would be to cut the wires, and he had concerns for nausea and vomiting because of her pregnancy. After her jaw was wired shut, Huey could not open her mouth, eat food normally, or [chew normally]. Huey had [a] special liquid diet that lasted nine weeks.

Trial Court Opinion, 5/11/16, at 1-3 (paragraph numbers and certain paragraph breaks omitted).

The procedural history of this case is as follows. On October 2, 2015, the Commonwealth charged Appellant via criminal information with aggravated assault,[1] simple assault,[2] and harassment.[3] On January 19, 2016, Appellant's trial commenced. Appellant testified on his own behalf. He admitted to striking Huey; however, he testified that he lacked the required *mens rea* for aggravated assault.

Appellant admitted ingesting bath salts on the evening in question. Appellant stated that his drug dealer laced the bath salts with bleach. The Commonwealth proceeded to cross-examine Appellant regarding the source of the bath salts, including the name of the drug dealer. Appellant refused to divulge the name of his drug dealer. The Commonwealth also questioned Appellant regarding his fear of the police that evening. At the ensuing charging conference, Appellant asked for an "uncharged crimes" instruction. N.T., 1/19/16, at 156. Appellant also requested jury instructions regarding a single blow being insufficient for aggravated assault and assault by mutual consent. At the conclusion of the charge, Appellant's counsel renewed his objection to the lack of instructions regarding: (1) other bad acts evidence,[4]

---

[1] 18 Pa.C.S.A. § 2702(a)(1).

[2] 18 Pa.C.S.A. § 2701(a)(1).

[3] 18 Pa.C.S.A. § 2709(a)(1).

[4] The certified record indicates Appellant's counsel stated that "considering the [Commonwealth's] statement that through his instead of drug dealer
*(Footnote Continued Next Page)*

(2) a single blow being insufficient for aggravated assault, and (3) assault by mutual consent.

The jury convicted Appellant of aggravated assault and simple assault. On March 3, 2016, Appellant was sentenced to an aggregate term of 7 to 14 years' imprisonment. On March 9, 2016, Appellant filed a post-sentence motion. On March 14, 2016, the trial court denied the post-sentence motion. This timely appeal followed.[5]

Appellant presents five issues for our review

1. Did the [trial court] err in denying [Appellant's] motions for a directed verdict, considering that the evidence demonstrated without contradiction that [Appellant] struck the victim only once, did not pursue the victim after the single strike, did not show any signs of further aggression, and did not make use of a readily available weapon?

_____

*(Footnote Continued)* ————————

caution for charged crimes instruction." N.T., 1/19/16, at 177. We believe that this is a transcription error; however, we glean from this remark that Appellant was renewing his request for an other bad acts instruction.

[5] On March 18, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On April 5, 2016, Appellant filed his concise statement. On May 11, 2016, the trial court issued its Rule 1925(a) opinion. On July 8, 2016, with the trial court's leave, Appellant filed an amended concise statement.

The trial court contends that Appellant waived his third issue because his concise statement was too vague. We disagree. Appellant specifically stated that the trial court erred in "allowing questioning, testimony, and argument . . . [relating] to the individual who sold drugs to [Appellant and Appellant's] alleged paranoia regarding the police." Appellant's Amended Concise Statement, 7/8/16, at 1. Accordingly, we conclude that Appellant preserved his third issue in his concise statement.

2. Did the [trial court] err in refusing to provide [Appellant's] requested language in its instruction to the jury regarding [a]ggravated [a]ssault, which was a correct statement of the current law?

3. Did the [trial court] err in allowing questioning, testimony, and argument that were unfairly prejudicial to [Appellant], including references to the individual who sold drugs to [Appellant] that had been taken on the night of the incident, and references to [Appellant's] alleged paranoia regarding the police?

4. Did the [trial court] err in refusing to instruct the jury regarding the limited use for which the jury may consider evidence that [Appellant] may have committed crimes with which he had not been charged, particularly considering the emphasis placed on such evidence by the Commonwealth?

5. Did the [trial court] err in refusing to instruct the jury regarding the theory of [a]ssault by [m]utual [c]onsent, despite evidence supporting the charge?

Appellant's Brief at 5-6.[6]

In his first issue, Appellant argues that the evidence was insufficient to convict him of aggravated assault. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Walls**, 144 A.3d 926, 931 (Pa. Super. 2016), *appeal denied*, 470 EAL 2016 (Pa. Feb. 23, 2017) (citation omitted). "In assessing Appellant's sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the

---

[6] We have re-numbered the issues for ease of disposition.

Commonwealth proved [each] element of the crime beyond a reasonable doubt." ***Commonwealth v. Ansell***, 143 A.3d 944, 949 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Ford***, 141 A.3d 547, 552 (Pa. Super. 2016) (citation omitted).

In order to convict an individual of aggravated assault, the Commonwealth must prove he or she (1) caused, or attempted to cause, serious bodily injury to another (2) intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a)(1). In this case, Appellant concedes that he inflicted serious bodily injury upon Huey. He argues, however, that he lacked the requisite *mens rea* for aggravated assault.

Appellant relies heavily upon this Court's decision in ***Commonwealth v. Roche***, 783 A.2d 766 (Pa. Super. 2001), in support of his argument that a single punch to the head is insufficient to prove the requisite *mens rea* for aggravated assault. What Appellant ignores, however, is that this Court, sitting *en banc*, abrogated ***Roche***. ***See Commonwealth v. Burton***, 2 A.3d 598, 605 (Pa. Super. 2010) (*en banc*), *appeal denied*, 32 A.3d 1275 (Pa. 2011) (***Roche*** "does not comport with our holding herein."). As this Court explained in ***Burton***, "[w]hen a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific

intent to cause such harm. . . . [T]he statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life." *Id.* at 602.

As our Supreme Court recognized in ***Commonwealth v. Alexander***, 383 A.2d 887 (Pa. 1978), this Court in ***Burton*** relied on the fact that the defendant "was significantly stronger and larger than" the victim when affirming Burton's conviction for aggravated assault. ***Burton***, 2 A.3d at 603. In this case, the jury reasonably found that Appellant was significantly stronger and larger than Huey. The jury was able to view both Appellant and Huey in the courtroom to determine their relative sizes. Thus, Appellant's arguments relating to the size and strength of Huey notwithstanding, the jury believed that there was a sufficient size and strength difference between Appellant and Huey that his single punch to the jaw was so reckless as to demonstrate an extreme indifference to human life. Accordingly, we conclude that the evidence was sufficient to convict Appellant of aggravated assault.

In his second issue, Appellant argues that the trial court should have instructed the jury that a single blow to the head, without more, is insufficient to convict a defendant of aggravated assault. As this Court has explained:

> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this

- 7 -

Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Roane*, 142 A.3d 79, 95 (Pa. Super. 2016) (internal alteration and citation omitted).

As Appellant concedes, the trial court "instructed the jury [] on the elements of the offense and the definitions of the relevant mental states[.]" Appellant's Brief at 19-20, *citing* N.T., 1/19/16, at 168-170. Appellant's requested jury instruction would have only confused the issue for the jury because it was not a complete statement of the law. *Cf. Commonwealth v. Pugh*, 101 A.3d 820, 824 (Pa. Super. 2014) (*en banc*), *appeal denied*, 117 A.3d 296 (Pa. 2015) ("A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue."). Specifically, Appellant's proposed instruction did not explain that whether Appellant "was disproportionately larger or stronger than [Huey]" was relevant in determining if Appellant acted recklessly. *Alexander*, 383 A.2d at 889; *see* Defense Exhibit 1 (Appellant's proposed instruction). Therefore, the incomplete instruction proposed by Appellant would have confused the jury and the trial court did not abuse its discretion in declining to give that instruction.

In his third issue, Appellant argues that the trial court improperly admitted irrelevant and prejudicial evidence. "[Q]uestions of the admission

and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." ***Commonwealth v. Caple***, 121 A.3d 511, 517 (Pa. Super. 2015) (citation omitted).

Appellant argues that the Commonwealth's questions relating to his paranoia were irrelevant. This argument is waived. Pursuant to Pennsylvania Rule of Appellate Procedure 302, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). With respect to evidentiary rulings, "Error may not be predicated upon a ruling that admits [ ] evidence unless . . . a timely objection, motion to strike[,] or motion *in limine* appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]" Pa.R.Evid. 103(a)(1). In this case, Appellant's objection to the paranoia question was that the Commonwealth misstated the evidence. N.T., 1/19/17, at 137-138. Appellant did not object on relevancy grounds. ***See id.*** As Appellant did not object on relevancy grounds, his relevancy argument is waived for appellate purposes. ***See Commonwealth v. Parker***, 104 A.3d 17, 29 (Pa. Super. 2014), *appeal denied*, 117 A.3d 296 (Pa. 2015) (finding waiver because the defendant made a relevancy objection at trial instead of a hearsay objection).

Appellant also argues that the Commonwealth's questions relating to the name of his drug dealer were irrelevant. Appellant objected on

relevancy grounds at trial. **See** N.T., 1/19/17, at 133. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.Evid. 401.

We agree with Appellant that the name of his drug dealer was irrelevant. It was immaterial if Appellant's drug dealer was Joe Smith or John Doe. The only thing that was relevant was that Appellant took bath salts on the night in question. This fact was elicited before the Commonwealth began questioning Appellant regarding the name of his drug dealer. Accordingly, we conclude that the trial court abused its discretion in overruling Appellant's objection. We address whether this error was harmless **infra**.

In his fourth issue, Appellant argues that the trial court erred by refusing to give Pennsylvania State Standard Jury Instruction (Criminal) 3.08, which addresses evidence of other offenses as substantive proof of guilt.[7] In its Rule 1925(a) opinion, the trial court states that Appellant waived his objection to the absence of this instruction. **See** Trial Court Opinion, 5/11/16, at 5.

To preserve a claim that a jury instruction was erroneous, a defendant must object to the charge at trial. **See Commonwealth v. Spotz**, 84 A.3d

---

[7] As noted at pages 4-5, **supra**, Appellant raises two distinct challenges. He challenges both the admissibility of the other bad acts evidence **and** the trial court's failure to give a limiting instruction.

294, 318 n.18 (Pa. 2014) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). As our Supreme Court has explained:

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

**Commonwealth v. Pressley**, 887 A.2d 220, 224 (Pa. 2005) (footnotes and citations omitted); **see Commonwealth v. Garang**, 9 A.3d 237, 244–245 (Pa. Super. 2010) (citations omitted); **Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted).

In this case, Appellant requested a limiting instruction addressed to evidence of other offenses at the charging conference. **See** N.T., 1/19/16, at 156. Furthermore, he objected to the omission of the instruction after the trial court charged the jury. **See id.** at 177. Accordingly, Appellant preserved this issue for appellate review.

As to the merits of Appellant's argument, as noted above we review the trial court's refusal to give an instruction for an abuse of discretion. *Roane*, 142 A.3d at 95. The trial court admitted evidence that Appellant committed uncharged crimes on the evening of the assault, *i.e.*, violations of the Controlled Substance, Drug, Device, and Cosmetic Act, 35 P.S. § 780-101 *et seq.*[8]

Pennsylvania Rule of Evidence 404 provides, in relevant part, "[e]vidence of a crime, wrong, or other act . . . may be admissible [in order to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.Evid. 404(b)(1-2). "When evidence is admitted for this purpose, the party against whom it is offered is entitled, upon request, to a limiting instruction." Pa.R.Evid. 404 cmt. (citation omitted); *Commonwealth v. Solano*, 129 A.3d 1156, 1178 (Pa. 2015), *citing* *Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa. 2002) ("Where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose."). Thus, under Rule 404(b), a defendant has an

---

[8] Specifically, it is illegal to "intentional[ly] purchase or knowing[ly] recei[ve] in commerce . . . any controlled substance, other drug or device from any person not authorized by law to sell, distribute, dispense or otherwise deal in such controlled substance, other drug or device." 35 P.S. § 780-113(a)(19). Although Appellant did not cite to the exact statutory provision in question, his requested jury instruction and arguments on appeal clearly implicate section 780-113(a)(19).

absolute right to a limiting instruction if other bad acts evidence is admitted at trial.

The Commonwealth argues that Appellant was not entitled to the limiting instruction because he confirmed the truthfulness of the other bad acts evidence during his testimony. This is not a basis that defeats a defendant's right to a limiting instruction under our evidentiary rules. Instead, Rule 404(b) specifies that if other bad acts evidence is admitted into evidence, the defendant is entitled, as of right, to a limiting instruction on how the jury may consider that evidence. **See Commonwealth v. Weiss**, 81 A.3d 767, 798 (Pa. 2013) (internal quotation marks and citation omitted; emphasis added) (Other bad acts "evidence **must**[ ] be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted."); **Commonwealth v. Billa**, 555 A.2d 835, 842–843 (Pa. 1989), *abrogated on other grounds*, **Commonwealth v. Freeman**, 827 A.2d 385 (Pa. 2003) ("The [other bad acts] evidence was admissible, but it should not have been admitted without restriction and without the court's clear and complete instruction to the jury to consider it only for its limited evidentiary purpose[.]"). The Commonwealth does not cite, nor are we aware of, Pennsylvania case law which holds that if a defendant admits to other bad acts on the witness stand, he or she is not entitled to a limiting instruction under Rule 404. Thus, we conclude that the trial court abused its discretion

by declining to give a limiting instruction with respect to the other bad acts evidence admitted at trial.

Having determined that the trial court erred in permitting the Commonwealth to question Appellant regarding the name of his drug dealer and in refusing the requested limiting instruction, we turn to whether those errors were harmless. *Cf. Commonwealth v. Mitchell*, 135 A.3d 1097, 1105 (Pa. Super. 2016), *appeal denied*, 145 A.3d 725 (Pa. 2016) (proceeding to a harmless error analysis after determining that the trial court erred in admitting evidence); *Commonwealth v. Sandusky*, 77 A.3d 663, 669 (Pa. Super. 2013) (proceeding to a harmless error analysis after determining that the trial court erred in failing to give an instruction). "An error is harmless if it could not have contributed to the verdict, or stated conversely, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction. The Commonwealth has the burden of proving harmless error beyond a reasonable doubt." *Commonwealth v. McClure*, 144 A.3d 970, 975–976 (Pa. Super. 2016) (ellipsis and citation omitted). We conclude in this case that the errors were harmless.

Appellant freely admitted to ingesting tainted bath salts on the evening in question. Moreover, he did not seek a limiting instruction with respect to his ingestion of the tainted bath salts. Instead, he only sought a limiting instruction with respect to the Commonwealth's questions relating to his

violation of 35 P.S. § 780-113(a)(19), *i.e.*, his failure to divulge the name of his drug dealer. The prejudicial effect of this evidence was minimal for two reasons. First, Appellant admitted during his testimony that the bath salts were laced with bleach. Any juror would understand that a pharmacist, or other individual licensed to dispense drugs, would not lace the substance with bleach. Second, bath salts, or 3,4-methylenedioxypyrovalerone, is a schedule I controlled substance. 21 C.F.R. § 1301.11(d)(37). Schedule I drugs can only be dispensed for government-approved research projects. ***United States v. Oakland Cannabis Buyers' Co-op.***, 532 U.S. 483, 493 n.5 (2001). As such, because Appellant conceded using bath salts, and did not request a limiting instruction on such use, the jury was aware that he obtained the bath salts from a nefarious source. The Commonwealth's questioning and Appellant's refusal to name such a source, therefore, did not provide the jury with probative or exceedingly prejudicial information.

Compared to the very minimal prejudice resulting from the lack of a limiting instruction and allowing the Commonwealth to question Appellant regarding the name of his drug dealer, the evidence that Appellant had the requisite *mens rea* for aggravated assault was strong. As noted above, the jury was able to see Appellant and Huey testify during trial and believed that there was a sufficient size and strength difference between Appellant and Huey that his single punch to the jaw was so reckless as to demonstrate an extreme indifference to human life. Accordingly, we conclude that the trial

court's errors in permitting the Commonwealth to question Appellant regarding the name of his drug dealer and in not giving the requesting limiting instruction was harmless.

In his final issue, Appellant contends that the trial court erred by failing to instruct the jury on assault by mutual consent. Appellant does not include any argument in the argument portion of his brief as to why he was entitled to such an instruction. As such, he waived this issue. *See* Pa.R.A.P. 2119(a).

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2017