J-S23025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DARNELL THOMAS A/K/A DARYL | : | |
| THURSTON | : | |
| | : | No. 1150 EDA 2016 |
| Appellant | | |

Appeal from the PCRA Order Dated April 4, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013003-2007

BEFORE: OLSON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED JULY 18, 2017**

Appellant, Darnell Thomas, a/k/a Daryl Thurston, appeals *pro se* from

the order denying his petition for relief filed pursuant to the Post Conviction

Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

On June 17, 2011, a jury convicted Appellant of first-degree murder,

kidnapping, possessing an instrument of crime (PIC), abuse of a corpse, and

criminal conspiracy.[1] Appellant's convictions arose from the April 17, 2007

murder of Juan Carlos Rosa in Philadelphia. On June 30, 2011, the trial

court sentenced Appellant to life without parole. The PCRA court

summarized the subsequent procedural posture as follows:

> Following imposition of sentencing, [Appellant][ filed a
> post-sentence motion, which was denied on July 6, 2011.

---

[1] 18 Pa.C.S. §§ 2502(a), 2901, 907, 5510, and 903.

Subsequent thereto, [Appellant] filed a notice of appeal as well as a requested Pa.R.A.P. 1925(b) statement. On April 15, 2013, the Superior Court affirmed the judgment of sentence. Commonwealth v. Darnell Thomas a/k/a/ Daryl Thurston, (1957 EDA 2011). [Appellant] thereafter filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on November 13, 2013. (275 EAL 2013).

On November 26, 2014, [Appellant] filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9741 *et seq*. Counsel was appointed to represent him and on November 25, 2015, counsel filed a no-merit letter and a motion to withdraw as counsel. This Court thereafter sent [Appellant] a notice to dismiss pursuant to Pa.R.Crim.P. 907. [Appellant] filed a response to counsel's no-merit letter and to the 907 notice. On April 4, 2016, this Court issued an order denying [Appellant] PCRA relief and granting PCRA counsel's motion to withdraw. [Appellant] thereafter filed a notice of appeal and a requested 1925(b) statement.

PCRA Court Opinion, 7/21/16, at 2.

On appeal, Appellant presents the following seven issues for our review:

1. Did the PCRA Court err in not addressing the 18 Pa.C.S.A. § 102(a)(1)(4) – Territorial Applicability issue in the correct context as stated in the initial PCRA?

2. Did the PCRA Counsel (O'Hanlon) fulfill all of the requirements in accordance with Turner/Finley?

3. Did the PCRA Court err in not acknowledging the prejudice PCRA Counsel (O'Hanlon) illustrated by not addressing Appellant's "layered" claims of ineffective assistance of counsel in exactitude?

4. Did the PCRA Counsel (O'Hanlon) err not to properly investigate and/or review the "void" in the record regarding the prejudice Appellant suffered by his former trial counsel allowing his case to proceed to trial with the Death Penalty attached without accomplice liability?

5. Did the PCRA Counsel (O'Hanlon) err in not investigating Appellant's claim of record inconsistencies, unscientific testimony and bias regarding questionable DNA evidence?

6. Did the PCRA Counsel (O'Hanlon) err by not addressing the prejudice and duress suffered by Appellant, who was forced to argue on the record against his former trial counsel, prosecution and the judge?

7. Did the PCRA Counsel (O'Hanlon) err in not effectuating Appellant's legal interests in accordance with **Strickland** [**v. Washington**, 466 U.S. 668 (1984)]?

Appellant's Brief at 2.

Preliminarily, we recognize that in reviewing the propriety of the PCRA court's order denying Appellant relief, we are limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). We pay great deference to the factual findings of the PCRA court, "but its legal determinations are subject to our plenary review." **Id.** The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that no genuine issues of material fact have been raised, no legitimate purpose would be served by further proceedings, and the petitioner is not entitled on the merits to post-conviction relief. Pa. R.Crim.P. 909(B). Instantly, because the PCRA court denied Appellant's petition without a hearing, we "must examine the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding there were no genuine issues of material fact and in denying relief without an evidentiary hearing." **Commonwealth v.**

***Springer***, 961 A.2d 1262, 1264 (Pa. Super. 2008) (internal citation omitted).

In his first issue, Appellant invokes the provision of the Crimes Code setting forth its territorial applicability, 18 Pa.C.S.A. § 102, and asserts that the Philadelphia Court of Common Pleas lacked jurisdiction because "the assault on the victim occurred in Pennsylvania . . . but the death of the victim occurred in Trenton, New Jersey." Appellant's Brief at 15. This claim lacks merit because it has been litigated and resolved previously by our Court. We recently explained:

> Before we can address appellant's claim on its merits, we must first determine whether the issue has been previously litigated. A claim that has been previously litigated is not cognizable for collateral relief. 42 Pa.C.S.A. § 9544(a)(2). The PCRA defines a matter as having been previously litigated when "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." ***Id.*** "[T]he fact that a petitioner presents a new argument or advances a new theory in support of a previously litigated issue will not circumvent the previous litigation bar." ***Commonwealth v. Burkett***, 5 A.3d 1260, 1270 (Pa. Super. 2010), citing ***Commonwealth v. Hutchins***, 760 A.2d 50 (Pa. Super. 2000).

***Commonwealth v. Roane***, 142 A.3d 79, 94 (Pa. Super. 2016).

In Appellant's direct appeal, we addressed his jurisdictional argument and concluded:

> Instantly, Appellant openly declared his intent to kill Victim, struck him with a handgun, and beat him unconscious in Philadelphia. Appellant and his cohorts wrapped Victim in bed sheets and plastic before dragging Victim's body to a car. Later, Victim was found dead in Trenton, New Jersey. Thus, Appellant's crimes began in Philadelphia, and his conduct in

Philadelphia showed complicity in Victim's murder. Therefore, the Philadelphia Court of Common Pleas had jurisdiction over Appellant's criminal case. **See** 18 Pa.C.S.A. § 102(a)(4), [**Commonwealth v.**] **Seiders**, [11 A.3d 495, 496-497 (Pa. Super. 2010].

**Commonwealth v. Thomas**, No. 1957 EDA 2011, 2013 WL 11272742, at *5 (Pa. Super. Ct. Apr. 15, 2013) (unpublished memorandum). Accordingly, because Appellant's first issue has been litigated previously, it lacks merit.

In his next six issues, Appellant assails the effectiveness of PCRA counsel. In examining such claims, we recognize:

> In order to obtain relief on a claim of ineffectiveness of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in **Strickland v. Washington** . . . . In Pennsylvania, we have applied the **Strickland** test by requiring that a petitioner establish that (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. **Commonwealth v. Pierce**, 567 Pa. 186, 786 A.2d 203, 213 (2001). In other words, prejudice is assessed in terms of whether the petitioner has shown that the demonstrated ineffectiveness sufficiently undermines confidence in the verdict. **Commonwealth v. Fletcher**, 586 Pa. 527, 896 A.2d 508, 516 n. 10 (2006). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the **Strickland** test, the court may dismiss the claim on that basis. **Commonwealth v. Ali**, 608 Pa. 71, 10 A.3d 282, 291 (2010).

**Commonwealth v. Montalvo**, 114 A.3d 401, 409–10 (Pa. 2015).

Consistent with the foregoing, we have reviewed the parties' briefs and the record, and conclude there is no merit to Appellant's claims of PCRA counsel's ineffectiveness. The Honorable Jeffrey P. Minehart, who sat as

both the trial and PCRA court in this case, has authored an opinion which capably addresses Appellant's ineffectiveness of counsel issues, including the determination that PCRA counsel complied with the requirements of **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). **See** Trial Court Opinion, 7/21/16, at 10-11 ("review of PCRA counsel's no-merit letter establishes that he complied with the [] requirements. . . . This Court carefully reviewed counsel's no-merit letter in conjunction with the entire record and determined that it complied with the law"). Accordingly, we adopt the PCRA court's opinion as our own in affirming the order denying Appellant's petition for post-conviction relief. The parties shall attach a copy of the PCRA court's July 21, 2016 opinion to any future filings relating to the merits of this appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : NO. CP-51-CR-0013003-2007

:

:

VS.

CP-51-CR-0013003-2007 Comm. v. Thomas, Darnell A.
Opinion

**FILED**

**JUL 2 1 2016**

**Appeals/Post Trial
Office of Judicial Records**

DARNELL THOMAS A/KA

DARYL THURSTON

7475772781

:

OPINION

**PROCEDURAL HISTORY**

Defendant, Darnell Thomas, a/k/a Daryl Thurston or Rell, was charged, *inter alia*, with Murder, Generally, Kidnapping, Possession of an Instrument of Crime, Generally, Abuse of Corpse, and Criminal Conspiracy. These charges arose out of an incident during which defendant, together with other persons, murdered Juan Carlos Rosa.

Defendant and his three co-defendants, Amira Mohamed, Jason Edwards, and Robert Edgefield, were tried before this Court and a jury in May and June of 2011.[1] At the conclusion

---

[1] Mr. Edgefield, a/k/a Boz, was found guilty of First-Degree Murder and the other charges. Mr. Edwards, a/k/a J-Rock, was found not guilty on all charges. Ms. Mohamed was found not guilty on the charge of Abuse of Corpse. The jury could not reach a verdict on the other charges and a mistrial was granted.

1

of the trial, the jury found defendant guilty of First-Degree murder and the other charges listed above. On the June 30, 2011, this Court sentenced defendant to life without parole on the First-Degree Murder charge, twenty to forty years on the Criminal Conspiracy charge, ten to twenty years on the Kidnapping charge, two-and-one half to five years on the Possession of an Instrument of Crime charge, and one to two years on the Abuse of Corpse charge. These sentences were ordered to be served concurrently.

Following the imposition of sentencing, defendant filed a post-sentence motion, which was denied on July 6, 2011. Subsequent thereto, defendant filed a notice of appeal as well as a requested Pa.R.A.P. 1925(b) statement. On April 15, 2013, the Superior Court affirmed the judgment of sentence. Commonwealth v. Darnell Thomas a/k/a Daryl Thurston, (1957 EDA 2011). Defendant thereafter filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on November 13, 2013. (275 EAL 2013).

On November 26, 2014, defendant filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §9741 *et seq*. Counsel was appointed to represent him and on November 25, 2015, counsel filed a no-merit letter and a motion to withdraw as counsel. This Court thereafter sent defendant a notice to dismiss pursuant to Pa.R.Crim.P. 907. Defendant filed a response to counsel's no-merit letter and to the 907 notice. On April 4, 2016, this Court issued an order denying defendant PCRA relief and granting PCRA counsel's motion to withdraw. Defendant thereafter filed a notice of appeal and a requested 1925(b) statement.

## FACTUAL HISTORY

On April 17, 2007, the brutal beating and murder of Mr. Rosa, known by friends as Wonkey, occurred at Frankie Flecha's home located at 4003 Roosevelt Boulevard in Philadelphia. According to the testimony of Mr. Flecha, his home was used as place to sell, use

2

and purchase drugs as well as a place for prostitution and dog fighting. Defendant, Mr. Edgefield and Mr. Edwards were responsible for selling drugs from Mr. Flecha's home. In exchange, Mr. Flecha received money and drugs.

On that day, Mr. Rosa rode his quad forerunner to the home to purchase crack cocaine. After buying the drugs, Mr. Rosa asked Mr. Flecha about purchasing more drugs. He was told that he would have to wait for defendant to bring the drugs to the house. At this point, Mr. Rosa left the house with Mr. Edwards and Lisa Montalvo to go to a Chinese restaurant. Before leaving, defendant came to Mr. Flecha's home, and according to Mr. Flecha's testimony, defendant, along with Ms. Mohamed and a person nicknamed Young Gun,[2] stole Mr. Rosa's quad forerunner. Before they returned, Mr. Rosa arrived with Ms. Montalvo.[3] Immediately Mr. Rosa realized his quad wad missing. He knocked on the door, Mr. Flecha let him in and Mr. Rosa said, "Where the fuck is my bike?" Mr. Flecha acted as if he did not know who took the quad. While Mr. Flecha continued to deny being involved or having any knowledge about the stolen quad, Mr. Rosa continued to ask him the whereabouts of the quad. Mr. Rosa then placed a telephone call to an unknown individual and Mr. Flecha called defendant and asked him to return to his home with the quad and to talk to Mr. Rosa.

Defendant and Ms. Mohamed returned to Mr. Flecha's home and told him that he did not want to sell drugs to Mr. Rosa because he was a "snitch" and did not like him."[4] The men began to argue and as it got out of control, Mr. Edgefield told his girlfriend, Christmas Dorsey to go upstairs and stay in her room. Once upstairs, Ms. Dorsey heard yelling downstairs and heard Mr. Rosa say he was going to report the drug dealing to the police. Defendant was also heard saying

---

[2] Young Gun's true name was not mentioned within the record.

[3] Mr. Edwards returned to Mr. Flecha's house alone before Mr. Rosa returned.

[4] Mr. Rosa and defendant were in custody together at some point prior to the incident. Testimony from Mr. Flecha indicated defendant felt that he was placed in custody due to Mr. Rosa "snitching" on him.

3

that the victim was not going anywhere and that he was going to die that day. Ms. Dorsey testified that she saw Mr. Edgefield retrieve a gun from the bedroom she went into after Edgefield told her to go upstairs.

At this point, Mr. Flecha observed defendant hit Mr. Rosa with a gun. As defendant tried to hit him again, Mr. Rosa then tried to run out of the house. He only made it to the front door before being grabbed by Young Gun, defendant, and Mr. Edgefield. Mr. Flecha observed Mr. Edgefield pick Mr. Rosa up and slam him into the floor. While on the floor, Mr. Edgefield sat on Mr. Rosa's lower back, grabbed him by his chin and started pulling the front of his body off the floor, while defendant kicked Mr. Rosa continuously.[5]

According to Ms. Montalvo and Mr. Flecha's testimony, defendant saw that Ms. Montalvo was witnessing the beating taken, which caused him to run up to her and grab her up by the jaw and neck. He reportedly said, "You didn't see nothing, right, bitch?" Mr. Flecha told defendant Ms. Montalvo did not see anything. Mr. Flecha then took Ms. Montalvo and two other individuals upstairs.[6] Ms. Segear could be heard screaming from upstairs to Mr. Flecha that he tell the persons beating Mr. Rosa to stop. Defendant then tried to head upstairs, but Mr. Flecha stepped in front of him and said, "Bro, please, that's my woman, please, she don't know, she's scared . . . ." Defendant replied, "Control your bitch." Ms. Segar observed defendant with a gun in his hand while this dispute took place upstairs. He then returned downstairs as Mr. Flecha tried to calm Ms. Segear. Mr. Flecha could hear Mr. Rosa screaming in pain saying, "Please don't kill me." The beating did not stop. Mr. Flecha returned downstairs to find defendant, Mr.

---

[5] Under direct examination, Megan Segear, Mr. Flecha's girlfriend, denied seeing Mr. Edwards downstairs at the time of the beating. Ms. Montalvo also denied seeing J-Rock. Both women also did not see Ms. Mohamed take part in the beating, other than to help gather material to wrap the body. Mr. Flecha was the only witness who testified having seen Mr. Edwards and Ms. Mohamed participate in the beating.

[6] These individuals were identified only as Chippy and Joe. Mr. Flecha testified that these individuals also saw the beating taking place in the home. However, no formal statements were taken from them.

Edwards, Ms. Mohamed and Mr. Edgefield stripping Mr. Rosa naked. Defendant turned to him and asked if there was any plastic in the house and was told he could find some in the basement. At some point, Ms. Dorsey decided to use the bathroom and observed Edgefield and defendant kicking and punching the victim. Ms. Dorsey returned to the room, but Mr. Edgefield's cell phone rang causing her to bring it downstairs. At this point, she observed Mr. Rosa tied up, naked and with a bag over his face.

Ms. Mohamed was seen going down into the basement and returning with a sheet of plastic and a children's bed sheet belonging to Mr. Flecha. Mr. Flecha testified that defendant asked him to help Ms. Mohamed spread out the sheet of plastic next to Mr. Rosa and then move the victim's body on top of the plastic. Mr. Flecha returned upstairs to the front room where Ms. Segear, Joe, and Chippy were staying. He then went back downstairs to get some crack off of defendant to calm down everyone upstairs.[7] Ms. Dorsey at some point came downstairs again and observed Mr. Rosa wrapped inside of a blanket. According to her, defendant and Mr. Edgefield dragged the body down the basement steps, carried it out of the house, and put it into a car.[8] Mr. Flecha, Ms. Segear, Ms. Montalvo, Ms. Dorsey, and everyone left inside the home failed to call 9-1-1 because they were scared that the defendants would possibly kill them if they talked to police.[9]

On Thursday, April 19, 2007, at approximately 7:30 p.m., two women, Linda Bradford and Janice Brown, went behind an abandoned house located at 15 Hampton Avenue, Trenton, New Jersey, to relieve themselves, where they discovered what appeared to be a body wrapped in a white sheet with plastic around it. They ran to their house across the street and called the

---

[7] Mr. Flecha testified that he observed Ms. Mohamed and defendant getting into a vehicle and driving off.

[8] Ms. Montalvo observed defendant, Mr. Edgefield, Ms. Mohamed leave together in a white car.

[9] Ms. Segear's statement to Homicide showed that a few days after the beating, Boz told her that "Wonkey was beaten real bad" and was taken to the hospital. Ms. Montalvo also gave similar testimony that Boz told her Mr. Rosa was in the hospital and going to live, but will probably never walk again.

5

Trenton Police Department. Detectives Gaetano Ponticello and Tamika Sommers responded to the call and confirmed that there was a body behind the home and subsequently secured the crime scene. Once the body was identified[10] as Mr. Rosa's, Detective Gary Britton, Sergeant Christopher Doyle and Detective Luis Vega of the Trenton Police Department went to the home of Isabella Rosa, the victim's mother, shortly before midnight on April 20, 2007. After asking Ms. Rosa questions concerning the victim's whereabouts prior to his death, she took the officers to Mr. Flecha's home.[11] Philadelphia Detectives Komorowski and Alminde of the 24th and 25th Police Districts of Philadelphia also accompanied them.

Upon arriving, the officers observed people looking out the windows of the home and decided to knock on the door to find out what was going on. Ms. Segear answered the door and was told by the officers they were conducting an investigation concerning the murder of Mr. Rosa. She then told the officers about the beating that took place inside the home. Officers also questioned Ms. Dorsey and Ms. Montalvo.[12] The officers made arrangements to take the three women to the Roundhouse. Approximately nine other individuals were inside the home, but they indicated that they had no information concerning the victim.

The autopsy of Mr. Rosa's body revealed that he had been beaten until unconscious, tied up with wire and cables, stripped naked and wrapped in a sheet and bags, removed from Philadelphia while possibly still alive, and at some point shot five times, four of those to the head. He also had been sexually assaulted as semen was found inside his mouth. The manner of death was deemed to be homicide.

---

[10] Upon completion of an autopsy, the Trenton Police Department fingerprinted the victim to determine the identity of the body. Ultimately, the prints belonged to Mr. Rosa and a subsequent search through Lexis-Nexis yielded an address belonging to his mother, Isabella Rosa, in Philadelphia.

[11] Ms. Rosa was aware that her son had a dispute at Mr. Flecha's home regarding the stolen quad.

[12] Mr. Flecha fled from the area.

## DISCUSSION

In his first claim defendant appears to be arguing that trial/appellate counsel was ineffective for not preserving for appellate review a claim that the question whether the issue of jurisdiction should have been presented to the jury.[13] It is defendant's position that a mixed question of law and fact existed with respect to the location where the victim was killed and/or died and therefore, that the issue of whether the Court of Common Pleas of Philadelphia County had jurisdiction to try defendant should have been presented to the jury to determine. In support of this claim, defendant cites to Commonwealth v. Passmore, 857 A.2d 697 (Pa. Super. 2004), and the following passage contained therein:

> Jurisdiction is a legal issue and therefore is not normally a concern for the jury. However, in those infrequent cases where jurisdiction depends upon the resolution of disputed facts, it is within the province of the jury to resolve the issue under proper instructions, and failure to give such instructions may constitute reversible error.
> Commonwealth v. Duden, 326 Pa.Super. 73, 473 A.2d 614, 621 (Pa.Super.1984) (citing Commonwealth v. Mull, 316 Pa. 424, 175 A. 418 (1934)).

Passmore, 857 A.2d at 709.

It is suggested that this Court's denial of relief with respect to this claim be affirmed. Pennsylvania law presumes counsel is effective and therefore, the burden is placed upon the defendant to prove otherwise. Commonwealth v. Brown, 767 A.2d 576, 581 (Pa. Super. 2001), citing Commonwealth v. Carpenter, 725 A.2d 154, 161 (Pa. 1999), citing Commonwealth v. Marshall, 633 A.2d 1100 (Pa. 1993); see also Commonwealth v. Baker, 614 A.2d 663, 673 (Pa. 1992). Trial counsel has broad discretion in matters of trial strategy and the determination of

---

[13] David S. Rudenstein, Esquire, represented defendant at trial and on direct appeal. It is noted that defendant was also represented by Gary Server, Esquire, at trial, who served as mitigation counsel.

7

what tactics to employ during litigation. Commonwealth v. Choi Chun Lam, 684 A.2d 153, 160 (Pa. Super. 1996). Furthermore, "[i]t is well established that failed trial tactics of defense counsel are not grounds for a new trial." Commonwealth v. Hall, 565 A.2d 144, 148 (Pa. 1989). Trial counsel will not be held ineffective if there was a reasonable strategic basis for his or her trial tactics. Commonwealth v. Pursell, 724 A.2d 293, 311 (Pa. 1999).

In order to establish that trial counsel's representation was deficient, defendant must establish all of the following three elements, as set forth in Commonwealth v. Pierce, 527, A.2d 973, 975-76 (Pa. 1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. Commonwealth v. Chmiel, 30 A.3d 1111, 1127 (Pa. 2011), citing Commonwealth v. Dennis, 950 A.2d 945, 954 (Pa. 2008).

The threshold question in reviewing an ineffectiveness claim is whether the issue, argument, or tactic which trial counsel failed to use at trial and which is the basis of the ineffectiveness claim is of arguable merit. Commonwealth v. Balodis, 747 A.2d 341, 343 (Pa. 2000). If defendant can prove that the argument or tactic which trial counsel failed to use at trial is of arguable merit, then the "reasonable basis" test is applied to determine if the course of action chosen by trial counsel was designed to effectuate his or her client's interest. Id. With regard to the second element, defendant must prove that "an alternative [action or inaction] not chosen offered a potential for success substantially greater than the course actually pursued." Chmiel, supra, citing Commonwealth v. Williams, 899 A.2d 1060, 1064 (Pa. 2006) (alteration added). To establish prejudice, defendant must demonstrate that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Chmiel, supra, at 1127-28, citing Dennis, supra, at 954.

8

Further, "[i]f it is clear that if a defendant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." Commonwealth v. Rios, 920 A.2d 790, 799 (Pa. 2007), citing Commonwealth v. Albrecht, 720 A.2d 693, 701 (Pa. 1998). A PCRA proceeding requires a defendant to establish that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Rios, supra, citing Pierce, supra, at 221–22; Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999).

Here, this claim lacks arguable merit. As the Superior Court noted in its opinion the Philadelphia Court of Common Pleas had jurisdiction as a matter of law over this matter because the crime commenced in Philadelphia County. Superior Court Opinion at 8-9. Because the evidence that the crime commenced in Philadelphia was overwhelming, no error occurred in denying defendant's request that the issue of jurisdiction be given to the jury. This was not one of the rare cases in which jurisdiction was in issue. Therefore, trial counsel was not ineffective for failing to raise the issue on appeal.[14]

Defendant next complains that this Court erred by granting PCRA counsel's motion to withdraw because counsel did not comply with the requirements of Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), and Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988). It is suggested that this claim be deemed waived because the issue is too vague for this Court to determine exactly what defendant's complaint is with respect to counsel's no-merit letter. Pa.R.A.P. 1925(b)(4)(ii) provides that an appellant's concise statement of errors complained of on appeal must "shall concisely identify each ruling or error that the appellant intends to

---

[14] Trial counsel also represented defendant on direct appeal.

9

challenge with sufficient detail to identify all pertinent issues for the judge") Pa.R.A.P. 1925(b)(4)(vii) provides that "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived". See also Commonwealth v. Hansley, 24 A.3d 410, 415 (Pa. Super. 2011) (citations omitted) ("Rule 1925(b) statement must be 'specific enough for the trial court to identify and address the issue [an appellant] wish[es] to raise on appeal'... if a concise statement is too vague, the court may find waiver").

If the issue is not determined to have been waived, it is suggested that no relief need be granted with respect thereto. Before counsel may be permitted to withdraw, counsel must conduct an independent review of the record. Commonwealth v. Pitts, 603 Pa. 1, 3, 981 A.2d 857, 876 n.l (Pa. 2009) (citing Turner, supra, and Finley, supra). The Turner/Finley requirements must be met to properly allow counsel to withdraw. Turner, 544 A.2d at 928; Finley, 550 A.2d at 215; see also Pitts, 981 A.2d at 976. The Turner/Finley requirements are: (1) counsel must submit a no-merit letter, which details the nature and extent of his review; (2) the no-merit letter must list each issue the defendant wished to have reviewed; (3) counsel must explain in his no-merit letter why the issues lack merit; (4) the PCRA court must conduct its own review of the record; and (5) the PCRA court must agree with counsel that the petition is meritless. Finley, 550 A.2d at 215. Further, counsel seeking withdraw must advise his client of his right to continue the proceedings *pro se* or with retained counsel if withdraw is permitted. Commonwealth v. Widgins, 29 A.3d 816, 818 (Pa. Super. 2011).

A review of PCRA counsel's no-merit letter establishes that he complied with the above requirements. He outlined the scope of his review, addressed each of defendant's issues, explained why he believed they lacked merit, and advised defendant of his rights. This Court carefully reviewed counsel's no-merit letter in conjunction with the entire record and determined

that it complied with the law. Therefore, this claim was properly deemed to lack merit and should not result in the grant of appellate review.

In his next claim defendant raises a series of ineffectiveness claims regarding the representation provided by PCRA counsel. He argues that PCRA counsel was ineffective for not raising the ineffectiveness of appellate counsel for not asserting that on direct appeal the Superior Court misapprehended his attack on the jurisdiction of this Court to hear the instant matter and for not filing for reargument after the Superior Court affirmed the judgment of sentence. He also accuses PCRA counsel of providing ineffective assistance for not arguing that trial counsel was ineffective for not obtaining a DNA expert, not including his DNA and jurisdictional issue in his 1925(b) statement, and for not objecting to hearsay testimony given by an assistant prosecutor regarding DNA evidence. It is suggested that relief was properly denied with respect to these claims.

First, with regard to the issues attacking PCRA counsel's failure to raise ineffectiveness claims regarding appellate counsel's representation defendant argues in his response to counsel's no-merit letter that the issue was misapprehended by PCRA counsel and that the gist of the issue is trial/appellate counsel's failure to raise at trial and on appeal a claim that this Court erred by not permitting the jury to whether Philadelphia Courts had jurisdiction to hear the case. Petitioner's Response to No-Merit Letter, pp. 2-6. Defendant's claim was properly rejected because, as noted above, it is beyond cavil that there was no factual dispute involving the question of jurisdiction. Moreover, on the issue of jurisdiction a careful review of the Superior Court's opinion indicates that it did not misapprehend defendant's jurisdictional issue. The issue rested on a claim that the victim was killed outside of Philadelphia and therefore, jurisdiction lay

11

elsewhere. The Superior Court addressed that claim and thus, counsel had no basis upon which to seek reargument. Therefore, PCRA counsel was not ineffective for not raising these claims.

Similarly, PCRA counsel had no reason to raise trial/appellate counsel's failure to retain a DNA expert. According to defendant, the DNA evidence was confusing and excluded him. Petitioner's Response to No-Merit Letter, pp. 6-16. It is suggested that relief was properly denied with respect to this claim because the evidence that defendant was present for the killing and participated in it is overwhelming given that several witnesses testified that he participated in the killing of the victim. Therefore, defendant cannot establish that trial counsel was ineffective for failing to retain a DNA expert, for not raising the issue on appeal, and for not objecting to comments made by the prosecutor concerning the DNA evidence, which, in any event, was not evidence but argument related to the DNA evidence.[15]

Regarding the issue whether trial/appellate counsel should have raised and preserved for appellate review a claim concerning the refusal by this Court to permit the jury to decide the jurisdiction issue, as noted above, there is no merit to the claim and thus, it is suggested that PCRA counsel was not ineffective for failing to raise the ineffectiveness of trial/appellate counsel with respect thereto.

Fourth, defendant argues that there is a "void" in the record and that PCRA counsel was ineffective for failing to investigate it and the prejudice defendant suffered by facing a possible death sentence, an outcome his co-defendants did not face. A review of defendant's filings show that the only mention of a "void" in the record is contained in his Response to PCRA counsel's no-merit letter. Petitioner's Response to No-Merit Letter, pp. 19. This Court was unable to discern exactly what petitioner is referring to and moreover, it appears that defendant's second

---

[15] Trial/appellate counsel engaged in an extensive cross-examination of the DNA expert thereby establishing that he was well aware of the importance pof the DNA evidence. (NT, 6/14/2011, at 152-169).

12

claim involving a death qualified jury deciding his case was raised for the first time in his 1925(b) statement. Defendant's lack of specificity undermines his claim and it is suggested that no relief be granted with respect thereto.

It is noted that had defendant preserved his claim regarding the failure of PCRA counsel to raise an issue concerning the seating of a death qualified jury, no relief would be due thereon because the law is clear that a death qualified jury is not prosecution prone. Commonwealth v. Strong, 563 A.2d 479 (Pa. 1989), *cert. denied*, 494 U.S. 1060 (1990). Moreover, defendant cannot establish prejudice because he did not receive the death penalty in any event.

Next, defendant argues that PCRA counsel was ineffective for not investigating issues involving the DNA evidence. It is suggested that relief be denied with respect to this claim for the reasons stated above, namely that defendant cannot establish prejudice due to the overwhelming amount of evidence presented during his trial establishing his guilt.

Finally, in his last two claims, defendant attacks the representation provided by PCRA counsel arguing that PCRA counsel did not address the prejudice defendant suffered, that by filing a no-merit letter PCRA counsel placed defendant in an adversarial position, and that PCRA counsel failed to provide him with effective assistance of counsel as required by law. Relief should be denied with respect to this claim because PCRA counsel did provide defendant with effective assistance. As noted above, counsel followed the dictates of Turner and Finley. Moreover, the fact that PCRA counsel did not argue prejudice does not raise a cognizable claim because counsel fully explained why none of defendant's claims had merit. Finally, with regard to defendant's claim that PCRA counsel placed him in an adversarial position, defendant ignores the fact that he always had the burden of proving the validity of his claims. He placed himself in an adversarial position when he filed his PCRA petition. Simply because the law permits

13

counsel to decide that there are no claims having merit and to file a no-merit letter does not provide a defendant with a separate cause of action or avenue of relief. Accordingly, it is suggested that defendant be denied relief with regard to his final, two claims.

## CONCLUSION

For the foregoing reasons, the defendant's assertions of error should be dismissed for lack of merit and the order entered in this matter denying defendant PCRA relief should be affirmed.

By the Court,

DATE: 7/20/16

_____
Honorable Jeffrey P. Minehart

14