J-S30030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NIAJEE COOPER | : | |
| | : | |
| Appellant | : | No. 987 EDA 2024 |

Appeal from the PCRA Order Entered March 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000727-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NIAJEE COOPER | : | |
| | : | |
| Appellant | : | No. 988 EDA 2024 |

Appeal from the PCRA Order Entered March 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005211-2016

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 18, 2025**

Niajee Cooper (Appellant) appeals from the order dismissing his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

This case involves three armed robberies, which occurred within a 12-hour time frame in Philadelphia. This Court previously summarized the events as follows:

> The first incident … involved the perpetrator approaching [the victim] outside of a store. While pointing a silver revolver at the victim and telling him to lay down, the culprit shot the victim in the arm and then fled[,] even though the victim attempted to comply, at least in part, by furnishing the gun wielder with money. After the shooting, the victim described his attacker as a black male, weighing approximately 220 pounds, who was wearing a black leather jacket and hooded sweatshirt. While the victim identified [Appellant] in a photo array twelve hours after the shooting, he indicated that [Appellant] was not the shooter during [Appellant's] preliminary hearing.
>
> The second robbery, transpiring one hour after the first, occurred inside of a restaurant. There, the shooter approached that victim with a silver revolver and commanded all the victim's money. The victim was then shot while attempting to leave. The victim described the shooter as a thin black male wearing a black skull cap, black jacket, and sunglasses. However, the victim could not identify [Appellant] in a subsequent photo array or lineup identification procedure. [During the lineup, the victim identified an individual who was not Appellant as the shooter.] Review of the restaurant's video surveillance system established that the shooter was wielding a silver revolver and wearing both a black leather jacket as well as black gloves with "AGT" in white letters on them.
>
> Some eleven hours after the second robbery, the third victim and two of his friends, while standing on a subway platform, were approached by the shooter. The shooter initially inquired whether he could use one of that group's SEPTA cards in exchange for money, but he walked away from the group after this interaction. A short time later, he returned and targeted the victim with a silver revolver. The shooter demanded that the victim empty the contents of his pockets, but the victim indicated that he did not have anything. To assuage the shooter, the victim offered a phone charger from his pocket. At some point, sensing an opening, the victim ran up the subway steps. However, the shooter followed. Ultimately, the perpetrator shot the victim with

- 2 -

his silver handgun at street level, notwithstanding that the victim was walking backwards with his hands up just prior to the shooting.

Two officers saw this third robbery/shooting take place. Those officers observed: (1) the discharge of the silver weapon; (2) the shooter, later identified as [Appellant], walk away and head towards a nearby parking lot; and (3) [Appellant,] while in motion, throw the firearm over a fence. When ordered to stop, [Appellant,] in the process of surrendering, took off his gloves and tossed them on the ground. [Appellant] was observed by officers to be wearing a black leather jacket, dark-colored hoodie, and blue jeans. Almost simultaneously, the officers recovered the loaded silver revolver thrown by [Appellant] as well as the black gloves with white "AGT" lettering on them.

[Appellant's] cell phone was seized at arrest. That cell phone would eventually be analyzed for locational/geographic data, which tied its location to the geographical vicinity of all three shootings. In addition, [Appellant's] jacket and gloves tested positive for gunshot residue. The gloves, too, had [Appellant's] DNA on them.

*Commonwealth v. Cooper*, 264 A.3d 397, 1360 EDA 2020 (Pa. Super. 2021) (unpublished memorandum at 2-4) (footnote omitted).

The Commonwealth charged Appellant at three criminal informations—one for each robbery. The three cases were consolidated for a non-jury trial. Prior to trial, the Commonwealth *nolle prossed* one of the three cases. At trial court docket number CP-51-CR-0000727-2016 (No. 727), the trial court convicted Appellant of three counts of robbery – threaten immediate serious bodily injury, and one count each of aggravated assault, possession of an instrument of crime (PIC), persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in

Philadelphia.[1]  At trial court docket number CP-51-CR-0005211-2016 (No. 5211), the trial court convicted Appellant of one count each of robbery – threaten immediate serious bodily injury, aggravated assault, PIC, persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.  The trial court deferred sentencing and ordered preparation of a presentence investigation report (PSI).  On September 13, 2018, the trial court sentenced Appellant to an aggregate 16 to 40 years' imprisonment, followed by 5 years' probation.

Appellant filed a timely post-sentence motion, which was denied by operation of law.  Appellant did not file a direct appeal.  Subsequently, Appellant successfully litigated a PCRA petition, and his direct appeal rights were reinstated, *nunc pro tunc*.  On September 27, 2021, this Court affirmed Appellant's judgment of sentence.  **See Cooper**, 1360 EDA 2020 (unpublished memorandum); **Commonwealth v. Cooper**, 264 A.3d 396, 1361 EDA 2020 (Pa. Super. 2021) (unpublished memorandum).[2]  Our Supreme Court denied

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 2702, 907, 6105(a)(1), 6106(a)(1), 6108.

[2] Appellant filed a separate notice of appeal at each docket number, in accordance with **Commonwealth v. Walker**, 185 A.3d 969, 976 (Pa. 2018) (holding that when "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed" (citing Pa.R.A.P. 341, Official Note)).  In both appeals, Appellant challenged the consolidation of his cases for trial.  At No. 1361 EDA 2020, Appellant raised an additional challenge to the weight of the evidence supporting his convictions.  Thus, this Court issued a separate memorandum decision at each docket number.

allowance of appeal. ***Commonwealth v. Cooper***, 274 A.3d 1223 (Pa. 2022); ***Commonwealth v. Cooper***, 274 A.3d 1224 (Pa. 2022).

On November 10, 2022, Appellant filed a *pro se* PCRA petition at both docket numbers. The PCRA court appointed Appellant counsel, who filed an amended PCRA petition on his behalf at each docket. The amended PCRA petition alleged both trial and appellate counsel rendered ineffective assistance.[3]

On January 9, 2024, the PCRA court conducted a hearing, during which PCRA counsel argued Appellant's claims, but presented no evidence. Following appropriate notice under Pa.R.Crim.P. 907, the PCRA court dismissed Appellant's PCRA petition without an evidentiary hearing on March 7, 2024.[4]

_____

[3] In the amended PCRA petition, Appellant also raised an after-discovered evidence claim, citing counsel's receipt of a "police misconduct packet involving an officer." Amended PCRA Petition, 5/21/23, at 6. Appellant abandoned this claim on appeal.

[4] We observe that the trial court dockets include entries indicating Appellant's PCRA petition was denied on January 9, 2024. Based on this docket entry, this Court issued a rule to show cause why the instant appeal should not be quashed as untimely filed from the January 9, 2024, denial of relief. Appellant filed a response, and we dismissed the rule to show cause. Our review of the transcripts reflects that at the close of the January 9, 2024, hearing, the PCRA court stated its conclusion that there is no merit to any of Appellant's claims. N.T., 1/9/24, at 31. The PCRA court stated, "I am denying it, I'm not dismissing it." ***Id.*** Despite indicating its intent to deny Appellant's PCRA petition, the PCRA court then stated it would issue a Rule 907 notice and dismiss the petition thereafter. ***Id.*** In light of the PCRA court's statement that a formal dismissal would follow, we conclude the appeal is properly and timely filed from the March 7, 2024, dismissal order.

This timely appeal followed.[5] Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant now raises the following issues for review:

1. Whether the PCRA court erred in denying [] Appellant's PCRA petition that counsel was ineffective?

2. Whether appellate counsel was ineffective for failing to appeal the denial of the motion for reconsideration of sentence for both docket numbers?

3. Whether trial counsel was ineffective for failing to present alibi evidence that Appellant requested be presented at trial?

4. Whether trial counsel was ineffective for failing to adequately prepare for trial and confer with Appellant?

Appellant's Brief at 7 (issues reordered).[6]

"Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014). We also defer to the PCRA court's credibility determinations, so long as they are supported by the record. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015). Moreover, a PCRA court may, in its discretion, "dismiss a PCRA petition

_____

[5] Appellant filed a separate notice of appeal at each docket number, in compliance with *Walker*. Upon motion of Appellant, this Court consolidated the two cases for appeal.

[6] Because Appellant's first numbered issue broadly challenges the PCRA court's denial of his petition and subsumes his remaining claims, we will not address it separately.

- 6 -

without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." ***Commonwealth v. Cruz***, 223 A.3d 274, 277 (Pa. Super. 2019) (citation omitted).

Each of Appellant's claims challenges the effectiveness of prior counsel. Preliminarily, we presume that counsel is effective, and the appellant bears the burden of proving otherwise. ***See Commonwealth v. Bennett***, 57 A.3d 1185, 1195 (Pa. 2012). The appellant must demonstrate that: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." ***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citation omitted). Failure to satisfy any prong of the ineffectiveness test requires rejection of the claim. ***See Commonwealth v. Roane***, 142 A.3d 79, 88 (Pa. Super. 2016) (citation omitted).

First, Appellant argues his trial counsel was ineffective for failing to confer with Appellant during the trial process. Appellant's Brief at 20. Appellant asserts "the lack of communication by counsel drastically hindered [] Appellant's ability to develop a trial strategy and defense to the charges against him." ***Id.*** According to Appellant, trial counsel visited him only once

and failed to respond to Appellant's phone calls. *Id.* at 21. Appellant also argues trial counsel "procrastinated and did not give his best effort in preparation for trial." *Id.*[7]

Appellant appears to rely on *Commonwealth v. Brooks*, 839 A.2d 245 (Pa. 2003), in support of his claim.[8] In *Brooks*, the defendant was charged with first-degree murder. *Brooks*, 839 A.2d at 247. Defense counsel "never once met with [the defendant] in person prior to his trial on capital charges" and recalled only one telephone conversation with the defendant. *Id.* at 249. Defense counsel explained "he had not been looking forward to spending any time alone with Mr. Brooks." *Id.* at 249 (citation and quotation marks omitted). The *Brooks* Court concluded defense counsel had no reasonable basis for failing to meet with the defendant, and the defendant suffered

---

[7] Appellant briefly argues that on the third day of trial, trial counsel requested an expert witness to examine video footage taken from the SEPTA station, where one of the robberies occurred. Appellant's Brief at 22. The trial court denied the motion, stating the request should have been made prior to the start of trial. *Id.*; *see also* N.T. (Non-jury Trial), 7/12/18, at 5. However, Appellant asserts simply that the motion could have been raised before trial had trial counsel properly conferred with him. Appellant's Brief at 22. Appellant does not argue he was prejudiced to the extent that, if timely raised, the trial court would have granted his motion for an expert witness.

[8] Appellant cites *Commonwealth v. Brown*, 159 A.3d 586, 87 EDA 2016 (Pa. Super. 2016) (unpublished memorandum). In addition to being a nonprecedential memorandum decision, *Brown* also concerns an untimely PCRA petition purporting to raise the newly-discovered fact exception, and is therefore inapplicable to the instant case. Based on Appellant's description of the pertinent holding, it appears he intended to cite *Brooks* (which is commonly cited in conjunction with similar claims).

prejudice caused by defense counsel's failure. *Id.* at 249-50. Emphasizing the intricacies of a capital case, the Court reasoned as follows:

> [T]he very nature of a capital case … clearly necessitates at least one in-person meeting between a lawyer and his client before the trial begins. Without such a meeting, there is little to no hope that the client will develop a fundamental base of communication with his attorney, such that the client will freely share important information and work comfortably with the lawyer in developing a defense plan. Moreover, only a face-to-face meeting allows an attorney to assess the client's demeanor, credibility, and the overall impression he might have on a jury.

*Id.* at 249; *see also id.* at 250 (stating that "in order to prepare a defense to a charge of murder in the first degree, it is essential that at the very least, counsel meet with his client in person to, *inter alia*, gather information from the client, evaluate the client's demeanor, and try to establish a working relationship.").

This Court, sitting *en banc*, discussed the applicability of **Brooks** in **Commonwealth v. Johnson**, 51 A.3d 237 (Pa. Super. 2012) (*en banc*), a case in which Johnson—who was charged with first-degree murder—argued he was entitled to relief because his counsel did not meet with him in person until the night before his trial.

> Our Supreme Court emphasized in **Brooks** that [the defendant's] attorney failed to meet with his client "at all." In this case, [counsel] represented [Johnson] at his preliminary hearing, conducted another face-to-face meeting at the prison with [Johnson] prior to trial, and performed at least one telephone consultation. While we acknowledge that more contact may have been advisable, we disagree … that the length and frequency of the consultations alone can support a finding of ineffectiveness. We further decline to read **Brooks** so rigidly that we are precluded

from evaluating the substantive impact of the consultations [counsel] did perform.

*Johnson*, 51 A.3d at 243-44 (citations omitted). This Court concluded counsel's meetings with Johnson, even if limited, were clearly substantive, given that counsel hired a private investigator to locate an alibi witness and secured five witnesses for trial. *Id.* at 244.

Here, unlike the defendant in *Brooks*, Appellant faced no capital charges. Appellant also acknowledges he met with trial counsel in person prior to trial. *Cf. Brooks*, 839 A.2d at 249 (indicating trial counsel "never once met with [the defendant] in person before his trial"). As we stated in *Johnson*, the "length and frequency of [attorney] consultations alone" cannot support a finding of ineffective assistance of counsel. *Johnson*, 51 A.3d at 244.

The PCRA court addressed Appellant's claim as follows:

In this instant case, trial documentation reflects that trial counsel met with Appellant at the prison and wrote [to] the warden for permission to bring his laptop [to the prison] to go over the evidence with Appellant. Moreover, trial counsel also had the opportunity to confer with Appellant in [courtroom at] the time of trial.

Appellant has failed to show how this limited contact prejudiced him and does not show how more contact between him and trial counsel would have altered trial counsel's trial performance or resulted in a different outcome.

PCRA Court Opinion, 10/29/24, at 6 (footnotes omitted; some capitalization modified).

Upon review, we agree with the PCRA court's conclusion that Appellant failed to establish there is a reasonable probability that additional contact with

trial counsel would have resulted in a different trial outcome. Because Appellant failed to establish prejudice resulting from trial counsel's alleged failure, his ineffectiveness claim merits no relief. **See Roane**, 142 A.3d at 88.

Next, Appellant asserts his trial counsel was ineffective for failing to present alibi evidence at trial. Appellant's Brief at 24. According to Appellant, video footage from Reflections Café, located at 1640 Wingohocking Street, shows him inside the café during the time of the robberies. **Id.** Appellant argues that,

> prior to trial, an investigator … went to the café and requested the video footage, but the owner informed the investigator that the video recording was already given to the police. Trial counsel's failure to introduce this evidence in regard to Appellant's alibi at trial[,] in conjunction with counsel's failure to adequately confer with Appellant in preparation of his defense, constitutes ineffective assistance of counsel because it violated [Appellant's] right to participate in his own defense.

**Id.**; **see also id.** (indicating Appellant asked trial counsel to present alibi evidence at trial).

> Our Supreme Court has explained that
>
> an alibi is a defense that places the defendant at the relevant time in a difference place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party…. At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi.

**Commonwealth v. Ali**, 10 A.3d 282, 316 (Pa. 2010) (citation omitted).

The Commonwealth maintains Appellant has not established the video footage exists. Commonwealth's Brief at 8; **see also** N.T. (PCRA Hearing),

1/9/24, at 27 (wherein the assistant district attorney (ADA) stated she "searched our file and [] contacted the trial ADA. No such video exists."). Counsel certainly could not be faulted for failing to present nonexistent evidence.

Assuming the video does exist, Appellant states simply that video footage shows him in Reflections Café "at the time of the crimes." Appellant's Brief at 24. However, Appellant does not specify the time frame in which he was purportedly inside the café. This failure is particularly glaring where the robberies occurred over a period of approximately 12 hours. *See* N.T., 1/9/24, at 26. Moreover, as the PCRA court emphasizes, Reflections Café is located in close proximity to one of the robberies. *See id.* (wherein the PCRA court stated, "[T]hese robberies happened within a twelve[-]hour window in the immediate vicinity [of Reflections Café]"); *id.* at 25 (ADA describing Reflections Café as being "within a two[-]block radius of where the first robbery was committed"); *see also* PCRA Court Opinion, 10/29/24, at 7 (highlighting the proximity of Reflections Café to the scene of one of the robberies, and stating video footage from the café "would inculpate Appellant further rather than establish an alibi[,]" since any video would place him near the scene of the crime).

In light of the foregoing, we conclude Appellant failed to establish there is a reasonable probability that the outcome of trial would have been different if counsel had produced the proffered video evidence. *See Commonwealth*

*v. Keaton*, 45 A.3d 1050, 1062 (Pa. 2012) ("Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different."). Thus, Appellant cannot establish trial counsel was ineffective on this basis, and his claim does not entitle him to relief.

Finally, Appellant claims his appellate counsel was ineffective for failing to raise, in his *nunc pro tunc* direct appeal, a discretionary sentencing claim (which he had preserved in his post-sentence motion), which resulted in waiver of the claim. Appellant's Brief at 22-23. Appellant asserts his sentence was harsh and unreasonable in light of mitigating factors presented during the sentencing hearing. *Id.* at 23.

Concerning ineffectiveness claims premised on counsel's failure to raise a discretionary sentencing challenge, we have stated as follows:

> [I]f the PCRA court can determine from the record that the sentence was not excessive, or that adequate reasons were placed on the record for exceeding the sentencing guidelines, then there is no underlying merit to the ineffectiveness claim and the claim must fail. Moreover, whether the sentence is manifestly excessive or whether adequate reasons were placed on the record for exceeding the guidelines are not matters subject to further clarification by the taking of evidence; rather, they are determined, as matters of law, upon a review of the record as it already exists.

*Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008).

- 13 -

Instantly, Appellant's prior record score was 3. N.T. (Sentencing), 9/13/18, at 4. Robbery, which was the lead charge at both docket numbers,[9] had an offense gravity score of 12. *Id.* Further, the deadly weapon used enhancement applied. *Id.* at 4-5.[10] The sentencing guidelines therefore recommended a minimum sentence of 84-102 months (7-8½ years) in prison, plus or minus 12 months for aggravating or mitigating factors. *See* 204 Pa. Code § 303.17(b). Accordingly, each of Appellant's robbery sentences were within the recommended guidelines range. "Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010).

Further, the record reflects trial counsel informed the trial court of possible mitigating factors, including the fact that Appellant obtained his high

_____

[9] At No. 727, the trial court sentenced Appellant to 8 to 20 years' imprisonment for his first robbery conviction. The court imposed concurrent prison terms for the remaining robbery convictions, as well as for the aggravated assault and PIC convictions. The trial court additionally imposed 5-year probationary terms for each firearm conviction, and directed them to run concurrently with one another. At No. 5211, the trial court sentenced Appellant to 8 to 20 years' imprisonment for his robbery conviction, to be served consecutive to his prison term at No. 727. The court imposed concurrent sentences for Appellant's aggravated assault and PIC convictions. Finally, the trial court imposed 5-year probationary terms for each firearm conviction, and directed them to run concurrently with one another, and with the probationary terms imposed at No. 727.

[10] Appellant did not contest the applicability of the enhancement during the sentencing hearing.

- 14 -

school diploma and pursued a job in cosmetology, despite his lack of parental influence and support during his childhood. *See* N.T., 9/13/18, at 6-7; *see also id.* at 11 (indicating Appellant's history included "[f]oster care, drug abuse, other types of abuse within the household"). Trial counsel also emphasized Appellant's relatively young age. *Id.* at 7.

The trial court specifically stated it considered Appellant's circumstances:

> I will say that [trial counsel] was absolutely right in talking about your childhood and the circumstances of your upbringing[,] and when we read the [PSI], I was not at all shocked at having read it as to how you could end up at this table based on the lack of support that you enjoyed in your childhood, the trauma that you've endured in your childhood, and some of the other events that are related to what happened to you. It's I think horrible for any person—any child to have to endure some of the things that you endured.

*Id.* at 27. The court also considered Appellant's rehabilitative needs, "including drug treatment and mental health treatment." *Id.* at 33. The trial court extensively detailed its reasoning before imposing sentence. *See id.* at 25-37.

Moreover, where, as here, the court has the benefit of a PSI, "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Moury*, 992 A.2d at 171 (citation and quotation marks omitted). Thus, the record reflects the trial court was fully informed of—and considered—all relevant sentencing considerations. Because Appellant's

underlying discretionary sentencing claim lacks merit, appellate counsel cannot be deemed ineffective for failing to pursue it on direct appeal. **See Roane**, 142 A.3d at 88. Appellant's final claim therefore merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/18/2025